DODD ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* CROSKEY ET AL., APPELLEES; EVANS, APPELLEE AND CROSS-APPELLANT.

[Cite as *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362.]

(No. 2013-1730—Submitted October 7, 2014—Decided June 18, 2015.)

O'CONNOR, C.J.

{¶ 1} In this appeal, we address important aspects of Ohio's Dormant Mineral Act and its effect on the interaction between the rights of the owner of the surface lands and the rights of the holder of an interest in the minerals beneath the surface. Specifically, we resolve the question whether a mineral-interest holder's claim to preserve a mineral interest from being deemed abandoned in accordance with R.C. 5301.56(H)(1)(a) is sufficient to preserve that interest if the claim was filed after notice of the surface owner's intent to declare the mineral interest abandoned and outside the 20-year window immediately preceding that notice.

{¶ 2} We answer this question in the affirmative. Accordingly, we affirm the judgment of the Seventh District Court of Appeals.

### RELEVANT BACKGROUND

{¶ 3} Oil and gas exploration in Ohio is hardly a new phenomenon. Oil was first discovered in Ohio in 1814. James C. Cissel, *Oil and Gas Law in Ohio*, Ohio

Legislative Service Commission Staff Research Report No. 63, at 12 (1965). By the late 19th century, Ohio was the nation's leading oil producer. *Id.* Levels of production have not remained steady, however, and Ohio's oil industry has been marked by boom and bust periods. *See id.* at 13 (referring to a decline prior to the Morrow County oil boom in late 1963).

{¶ 4} Production of mineral resources has driven the development of energy law in Ohio. Indeed, an oil boom resulted in the General Assembly's enactment of Ohio's first major regulations of the oil and gas industry in 1965, which marked a dramatic shift from the simple conservation statutes that had existed before. *Id.*; Lucas P. Baker, *Forced into Fracking: Mandatory Pooling in Ohio,* 42 Cap.U.L.Rev. 215, 221 (2014); J. Richard Emens & John S. Lowe, *Ohio Oil and Gas Conservation Law—The First Ten Years (1965–1975),* 37 Ohio St.L.J. 31, 33–35 (1976) ("Ohio, however, had only the most rudimentary conservation legislation prior to 1965").

{¶ 5} More recently, the natural gas boom in the Utica and Marcellus Shale regions has presented new challenges for Ohio law, including the interplay between statutes that govern the rights to the surface and to the minerals below. *See* Baker at 215, 227. The fact that farmland is now more valued for what lies beneath rather than what can be grown or raised above has heightened interest in who owns the land and, more specifically, who holds the mineral rights and the rights to make the potentially lucrative leases. *See, e.g.,* Ray Paprocki, *Cadiz Starts to Ride the Boom,* Columbus Dispatch (May 7, 2012), available at http://www.dispatch.com/content/stories/insight/2012/05/06/1–cadiz–starts–to–ride–the–boom.html ("Some of the talk is about the out-of-state license plates spotted in town and the researchers clogging the Harrison County recorder's office, poring over land records").

{¶ 6} These inquiries can be difficult to sort out.

{¶ 7} Commonly, parcels of land in mineral-producing areas have mineral rights severed from the surface rights. Over time, the severed mineral interests are transferred and divided through business and familial transactions. As a result, it can be difficult, or even impossible, to find the owners of such severed mineral rights.

{¶ 8} To address this challenge, the General Assembly enacted the Dormant Mineral Act in 1989. Sub.S.B. No. 223, 142 Ohio Laws, Part I, 981. Codified at R.C. 5301.56, the act supplements the Marketable Title Act, R.C. 5301.47 et seq., and provides a mechanism to reunite severed and abandoned mineral rights with the surface estate.

### The Dormant Mineral Act

{¶ 9} To accomplish its purpose, the Dormant Mineral Act, as amended, establishes that a mineral interest held by someone other than the surface owner

"shall be deemed abandoned and vested in the owner of the surface lands" if the statutory notice requirements are met and none of the following apply: (1) the mineral interest is in coal or coal-related, (2) the mineral interest is held by the United States, the state, or any other political body described by the statute, or (3) a saving event enumerated in the statute occurs within the 20 years immediately preceding the notice required by the Dormant Mineral Act. R.C. 5301.56(B).

{¶ 10} Under R.C. 5301.56(B)(3), there are six saving events that would render a mineral interest ineligible to be deemed abandoned if the event occurred in the 20 years preceding the required notice:

> (a) The mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located.
>
> (b) There has been actual production or withdrawal of minerals by the holder from the lands, from lands covered by a lease to which the mineral interest is subject, from a mine a portion of which is located beneath the lands, or, in the case of oil or gas, from lands pooled, unitized, or included in unit operations * * *.
>
> (c) The mineral interest has been used in underground gas storage operations by the holder.
>
> (d) A drilling or mining permit has been issued to the holder * * *.
>
> (e) A claim to preserve the mineral interest has been filed in accordance with division (C) of this section.
>
> (f) In the case of a separated mineral interest, a separately listed tax parcel number has been created for the mineral interest in the county auditor's tax list and the county treasurer's duplicate tax list in the county in which the lands are located.

{¶ 11} This appeal addresses the effect of a claim to preserve filed under R.C. 5301.56(H) in the absence of an affidavit describing the occurrence of one of the saving events described in subsections (B)(3)(a) through (f).

### Mineral–Rights Dispute

{¶ 12} By deed dated August 2009, appellants, Phillip Dodd and Julie Bologna, acquired the surface rights to certain land in Harrison County. The deed indicated that oil and gas rights underlying the surface property were not part of the conveyance as follows:

Excepting and reserving unto Samuel A. Porter and Blanche Long Porter all of the oil and gas in Warranty Deed to Consolidated Fuel Company filed for record May 27, 1947 in Volume 121, page 381, Deed Records for the 148.105 acre. (Note: No further transfers)

\* \* \*

Excepting a one-third interest in the oil and gas to Samuel A. Porter and Blanche Long Porter in Warranty Deed filed for record may [sic] 27, 1947 in Volume 121, page 383, Deed Records.[1]

{¶ 13} There is no dispute that the 2009 deed did not convey to appellants all of the mineral rights underlying their surface property, because of the exception in the deed. But after an oil and gas company contacted appellants about leasing the mineral rights to the land, appellants initiated procedures under the Dormant Mineral Act to have the mineral interests deemed abandoned and vested in them along with their surface ownership.

{¶ 14} On November 27, 2010, appellants published a notice of abandonment of the mineral interests underlying their property. The notice was published in the local newspaper, the Harrison News Herald, and was addressed to "Samuel A. Porter and Blanche Long Porter, their unknown successors and assigns."

{¶ 15} Two days later, appellee John William Croskey recorded a quitclaim deed for mineral interests underlying the property. That deed purported to transfer from John William Croskey to him and Anita M. Croskey, as trustees of the John William Croskey Revocable Trust, all the oil and gas rights underlying the surface property acquired by appellants through the 2009 deed.

{¶ 16} On December 23, 2010, John William Croskey filed and recorded a document entitled "Affidavit Preserving Minerals." The Croskey affidavit outlined a history of transactions affecting the mineral rights underlying appellants' surface property. And it identified 36 persons as "current owners of the minerals and oil and gas reserved by the deeds" set forth in the affidavit who "do not intend to abandon their rights to the mineral interest, but intend to preserve their rights."

{¶ 17} On February 9, 2011, appellants filed a declaratory-judgment action to quiet title to the oil and gas interests against Croskey and all the persons Croskey named in his affidavit as owners of the mineral rights. Appellants moved for summary judgment, contending that pursuant to the Dormant Mineral

---

1. The trial court found that the 2009 deed incorrectly cited the 1947 instrument found in Volume 121, page 383, of the deed records and determined that it should state that the reservation was retained by Emma Croskey. Both the trial and appellate courts determined that this error did not affect the outcome of their decisions. 2013-Ohio-4257, 2013 WL 5437365, at ¶ 5, fn. 1.

Act, the mineral rights had been abandoned. Therefore, they asserted, the ownership rights to the minerals had vested in them. Appellees also moved for summary judgment on various grounds. One motion for summary judgment was filed by appellees Karen A. Chaney, Patty Hausman, Linda C. Boyd, and Terri Hocker, who contended that the Croskey affidavit was sufficient to preserve the interests of the mineral-rights holders. In response, appellants asserted that the Croskey affidavit was not sufficient to preserve the mineral rights, because it was filed after they gave notice of their intent to declare the mineral interests abandoned.

{¶ 18} The trial court concluded that the mineral interests had been the subject of a title transaction, the 2009 deed, that was recorded within the 20 years preceding appellants' notice of intent to declare the mineral interests abandoned in accordance with R.C. 5301.56(B)(3)(a) and that the Croskey affidavit preserved the mineral-rights holders' interests for purposes of the Dormant Mineral Act. Thus, the trial court determined as a matter of law that appellants could not establish a claim for the abandonment of the oil and gas rights underlying their surface property and granted summary judgment to appellees.

{¶ 19} The Seventh District Court of Appeals affirmed, but agreed with only one of the trial court's conclusions. Specifically, the appellate court agreed that the Croskey affidavit complied with R.C. 5301.56(H)(1)(a) to preserve the mineral holders' interests. 2013-Ohio-4257, 2013 WL 5437365, ¶ 22, 25. For this reason alone, the appellate court affirmed the trial court's award of summary judgment.

{¶ 20} The appellate court also concluded in dicta, however, that the reservation or exception of the mineral interests in the 2009 deed conveying the surface rights was not a saving event under R.C. 5301.56(B)(3)(a).[2] Id. at ¶ 49.

{¶ 21} We accepted appellants' discretionary appeal on their sole proposition of law regarding the mineral-interest holder's claim to preserve. 138 Ohio St.3d 1432, 2014-Ohio-889, 4 N.E.3d 1050. After oral argument, we sua sponte accepted the cross-appeal of appellee Harriet C. Evans on her second proposition of law regarding the exception of mineral rights in the 2009 deed and ordered additional briefing. 140 Ohio St.3d 1406, 2014-Ohio-3708, 14 N.E.3d 1052.

{¶ 22} Because we resolve the appeal on the issue of the claim to preserve, and because the appellate court's discussion on the remaining issues is dicta, we need not reach the effect of the language of exception in the 2009 deed.

---

2. The appellate court further concluded that although appellants' notice of their intent to declare the mineral interests abandoned was inadequate under the statutory requirements, the error was harmless because notice was actually received. 2013-Ohio-4257, 2013 WL 5437365, ¶ 59. Lastly, the appellate court concluded that appellants failed to meet their burden to establish a genuine issue of material fact regarding Croskey's status as an heir or assign of the Porters. Id. at ¶ 65. Neither of these issues is before this court.

ANALYSIS

{¶ 23} Appellants contend that in order to preclude abandonment, the Dormant Mineral Act requires evidence that a saving event occurred in the 20–year window prior to the surface owner's notice of intent to declare the mineral interests abandoned and thus a mineral-interest holder's claim to preserve that is filed after the surface owner's notice does not preclude the mineral rights from being deemed abandoned. According to appellants, the Croskey affidavit was not sufficient by itself to preclude abandonment because it was filed after appellants' notice was published.

{¶ 24} In determining what the statute requires, our paramount concern is to ascertain and give effect to the intention of the General Assembly. *Henry v. Cent. Natl. Bank,* 16 Ohio St.2d 16, 242 N.E.2d 342 (1968), paragraph two of the syllabus. To determine the legislative intent, we look to the language of the statute and the purpose to be accomplished by the statute. *Boley v. Goodyear Tire & Rubber Co.,* 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, ¶ 20. When the statute's meaning is clear and unambiguous, we apply the statute as written and refrain from adding or deleting words. *Id.; Armstrong v. John R. Jurgensen Co.,* 136 Ohio St.3d 58, 2013-Ohio-2237, 990 N.E.2d 568, ¶ 12.

{¶ 25} In 2006, the General Assembly amended the Dormant Mineral Act by adding a notice procedure that the surface owner must initiate in order to have the mineral rights deemed abandoned.[3] R.C. 5301.56(E) through (H).

{¶ 26} Before the mineral interests can be vested in the surface owner under the Dormant Mineral Act, the surface owner must complete two tasks. R.C. 5301.56(E). First, the surface owner must serve notice of the intent to declare the mineral interest abandoned on the purported mineral-rights holders pursuant to the statutory requirements. R.C. 5301.56(E)(1). Second, between 30 and 60 days after the notice is served or published, the surface owner must file and record an affidavit of abandonment that meets the statutory requirements, including a statement that the mineral interest has been abandoned and a description of the facts supporting the abandonment. R.C. 5301.56(E)(2) and (G).

---

3. The original 1989 version of the Dormant Mineral Act did not include a notice procedure. 142 Ohio Laws, Part I, 981, 985–987. This absence has resulted in litigation questioning whether mineral rights automatically vested after 20 years without action by the surface owner if no saving event occurred, which is an issue currently before this court, including in the following cases: *Walker v. Shondrick–Nau,* case No. 2014–0803; *Corban v. Chesapeake Exploration, L.L.C.,* case No. 2014–0804; *Swartz v. Householder,* case No. 2014–1208; and *Shannon v. Householder,* case No. 2014–1209. But in this appeal, the parties do not dispute whether the 1989 or 2006 version of the act applies. In fact, the appeal addresses the effect of a claim under R.C. 5301.56(H), which is a provision added by the 2006 amendments. Sub.H.B. No. 288, 151 Ohio Laws, Part III, 5960. Because there is no dispute about which version of the act applies, we do not craft one, and instead apply the Dormant Mineral Act as amended in 2006.

{¶ 27} To assert that the mineral interest has not been abandoned, the holder of the mineral interest, or the holder's successors or assigns, has 60 days from the date the notice was served or published to file in the county recorder's office either of the following:

> (a) A claim to preserve the mineral interest in accordance with division (C) of this section [R.C. 5301.56];
>
> (b) An affidavit that identifies an event described in division (B)(3) of this section that has occurred within the twenty years immediately preceding the date on which the notice was served or published under division (E) of this section.

R.C. 5301.56(H)(1).

{¶ 28} In order to satisfy the requirements of R.C. 5301.56(C), as referred to in subsection (H)(1)(a) above, as well as R.C. 5301.56(B)(3)(e), the claim to preserve must be one that does all of the following:

> (a) States the nature of the mineral interest claimed and any recording information upon which the claim is based;
>
> (b) Otherwise complies with section 5301.52 of the Revised Code;
>
> (c) States that the holder does not intend to abandon, but instead to preserve, the holder's rights in the mineral interest.

R.C. 5301.56(C)(1). A claim that meets these requirements preserves the rights of all of the mineral-interest holders in the land. R.C. 5301.56(C)(2).

{¶ 29} If the mineral-interest holder fails to comply with either of the alternative requirements of R.C. 5301.56(H)(1) by filing a claim to preserve or an affidavit identifying a saving event, the surface owner must file a notice of failure to file pursuant to the statutory requirements. R.C. 5301.56(H)(2). After this notice is recorded, the mineral interest "shall vest in the owner of the surface of the lands." *Id.*

{¶ 30} Reading the statute as a whole, we conclude that the plain language of the Dormant Mineral Act permits a mineral-interest holder's claim to preserve to serve two separate but similar functions depending on when it is filed for record: one as a saving event under R.C. 5301.56(B)(3)(e) when filed in the 20 years preceding notice and another to preclude the mineral interest from being deemed abandoned under R.C. 5301.56(H)(1)(a) when filed within 60 days after service of the surface owner's notice. Nothing in the act states that a claim to preserve

filed under R.C. 5301.56(H)(1)(a) must refer to a saving event that occurred within the preceding 20 years. Nor do the notice procedures in R.C. 5301.56(H)(1)(a) require that the claim to preserve be itself filed in the 20 years preceding notice by the surface owner. The statute plainly states that such a claim can be filed within 60 days after notice. R.C. 5301.56(H). Thus, to preserve the mineral holder's interests, the plain language of R.C. 5301.56(H) permits either a claim to preserve the mineral interest or an affidavit that identifies a saving event that occurred within the 20 years preceding notice.

{¶ 31} Here, there is no question that Croskey did not file his affidavit in the 20 years preceding appellants' notice of intent to declare the mineral interests abandoned. And although the Croskey affidavit was styled as an affidavit, it did not meet the requirements in R.C. 5301.56(H)(1)(b) because it did not identify a saving event in the 20 years preceding notice.

{¶ 32} The issue, then, is whether the affidavit qualified as a claim to preserve the mineral interests from being deemed abandoned. In form and substance, the Croskey affidavit satisfied the requirements for a claim to preserve under R.C. 5301.56(C), including that it be in the form of an affidavit pursuant to R.C. 5301.52. And because it was filed within 60 days after appellants' notice, it satisfied R.C. 5301.56(H)(1)(a) to preserve the mineral interests.

{¶ 33} To interpret the statute as appellants contend would require the insertion of language in R.C. 5301.56(H)(1)(a) instructing that the claim to preserve must be filed in the 20 years prior to notice and would further require the deletion of language that expressly permits the filing within 60 days after notice. But this court must give effect to the words used and refrain from inserting or deleting language chosen by the General Assembly. *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53–54, 524 N.E.2d 441 (1988).

{¶ 34} Adding a requirement that the claim to preserve under R.C. 5301.56(H)(1)(a) be filed within the 20 years preceding notice would render meaningless the deadline in R.C. 5301.56(H)(1) of 60 days after notice. And it would render superfluous the option under R.C. 5301.56(H)(1)(b) of filing an affidavit that identifies a saving event in the 20 years preceding notice. The court should avoid a construction that renders a provision superfluous, meaningless, or inoperative. *Boley*, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, at ¶ 21. The statute plainly permits a mineral-interest holder to preserve his or her claim by filing either a claim to preserve within 60 days or an affidavit identifying a saving event in the 20 years preceding notice. R.C. 5301.56(H).

{¶ 35} Even if the statute were ambiguous, we would be able to determine the General Assembly's intent by considering several factors, including the legislative history, and arrive at the same conclusion. R.C. 1.49. The Final Analysis of the 2006 amendments to the act explains that a mineral-interest holder's claim to

preserve under R.C. 5301.56(H), "itself preserves the holder's interest" if filed within 60 days after the surface owner's notice. Amber Hardesty, Final Analysis of Sub.H.B. 288, Legislative Service Commission. The analysis explains that "[a]lternatively, where applicable," the mineral-interest holder can file an affidavit describing a saving event that occurred within the 20 years preceding notice. *Id.* Thus, the legislature clearly intended that either a claim to preserve filed after notice or an affidavit describing a saving event that occurred in the 20–year window preceding notice could be filed to preclude abandonment. There is nothing in the legislative history that would support an interpretation that the claim to preserve under R.C. 5301.56(H)(1)(a) must be filed in the 20 years preceding notice in order to preclude abandonment.

{¶ 36} Moreover, we recognize that the Marketable Title Act mandates liberal construction of its provisions, including R.C. 5301.56, "to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title." R.C. 5301.55. Allowing a claim preserving a mineral interest to be filed after the surface owner's notice furthers the legislative purpose because a claim to preserve describes an identifiable mineral-interest holder who presents a chain of title from which that holder claims interest in the mineral rights.[4]

## CONCLUSION

{¶ 37} We hold that a mineral-interest holder's claim to preserve filed pursuant to R.C. 5301.56(H)(1)(a) is sufficient to preclude the mineral interests from being deemed abandoned if filed within 60 days after notice of the surface owner's intent to declare those interests abandoned. We therefore affirm the judgment of the court of appeals on this issue alone, and the appellants are precluded from declaring the mineral interests abandoned under the Dormant Mineral Act.

Judgment affirmed.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

---

Crawford, Lowry & Associates, L.L.C., and G. Ian Crawford, for appellants and cross-appellees.

Rupert Beetham, for appellees John William Croskey, Mary E. Surrey, Roy Surrey, Emma Jane Croskey, Margaret Ann Turner, Mary Louise Morgan,

---

4. Presumably, the surface owner can challenge the accuracy of the mineral-interest holder's claim. But that is outside the operation of the Dormant Mineral Act, which addresses only whether a surface owner can employ the act's provisions to deem the mineral rights abandoned, reunite the mineral rights with the surface rights, and vest them in the surface owner.

Martha Beard, Lee Johnson, Edwin Johnson, JoAnn Zitko, David B. Porter, JoAnn C. Wesley, Cindy R. Weimer, Evart Dean Porter, Stuart Barry Porter, Brian Porter, Mary Elaine Porter, Kim Berry, Samuel G. Boak, Lorna Bower, Sandra Dodson, and Ian Resources, L.L.C.

McDonald Hopkins, L.L.C., R. Jeffrey Pollock, and Erin K. Walsh, for appellees Karen A. Chaney, Patty Hausman, Linda C. Boyd, and Terri Hocker.

Marquette D. Evans, for appellee and cross-appellant Harriet C. Evans.

Baker, Dublikar, Beck, Wiley & Mathews and James F. Mathews, for amicus curiae Jon D. Walker Jr.

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Gregory W. Watts, Matthew W. Onest, David E. Butz, and William G. Williams, for amici curiae Jeffco Resources, Inc., Mark and Kathy Rastetter, Douglas Henderson, Djuro and Vesna Kovacic, Brett and Kim Trissel, and Steven E. and Diane Cheshier.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Samuel C. Peterson, Deputy Solicitor, for amicus curiae state of Ohio.

Jackson Kelly, P.L.L.C., Clay K. Keller, and J. Alex Quay, for amicus curiae Chesapeake Exploration, L.L.C.

Bricker & Eckler, L.L.P., Matthew W. Warnock, Daniel C. Gibson, and Daniel E. Gerken, for amici curiae Noon and Shepherd Mineral Interest Owners.