**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Walker v. Shondrick-Nau,* **Slip Opinion No. 2016-Ohio-5793.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5793

WALKER, APPELLEE, *v.* SHONDRICK-NAU, EXR., APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Walker v. Shondrick-Nau,* Slip Opinion No. 2016-Ohio-5793.]**

*Dormant Mineral Act—R.C. 5301.56—Pursuant to* Corban v. Chesapeake Exploration, L.L.C., *2006 version of Dormant Mineral Act applies— Pursuant to* Dodd v. Croskey, *owner of severed mineral estate preserved his rights.*

(No. 2014-0803—Submitted June 23, 2015—Decided September 15, 2016.)

APPEAL from the Court of Appeals for Noble County,

No. 13 NO 402, 2014-Ohio-1499.

_____

O'CONNOR, C.J.

{¶ 1} In this appeal, we are asked to apply Ohio's Dormant Mineral Act, R.C. 5301.56, to determine the ownership of certain mineral rights. Based on *Corban v. Chesapeake Exploration, L.L.C.*, __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __, the Dormant Mineral Act as amended in 2006 applies in this case. And

based on *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, the owner of the severed mineral estate preserved his rights. Accordingly, we reverse the judgment of the Seventh District Court of Appeals.

**Relevant Background**

{¶ 2} John Noon acquired the subject real property in Noble County, including the mineral rights underlying the surface, by a deed recorded in 1965. The same year, Noon transferred the surface estate by quitclaim deed but reserved his rights to the coal, oil, gas, and other minerals underlying the surface ("1965 Deed"). Specifically, the deed reservation stated as follows:

> Excepting and reserving to the Grantor, his heirs, successors and assigns, all coal, oil and gas and all other minerals underlying the premises together with all the easements, rights and privileges therein which Grantor, his heirs, successors or assigns, in his or their sole discretion, may deem necessary, desirable or convenient, in order to remove said coal, oil, gas and other minerals by any method now employed or hereafter developed, including strip mining methods, from said premises and also to reclaim as required, or permitted by law, said premises and any other premises now or hereafter owned, leased or operated upon by Grantor, his heirs, successors and assigns. * * *
>
> The coal, oil, gas and other minerals so reserved may be removed, and the rights and privileges so reserved may be exercised by the Grantor, his heirs, successors and assigns, without any liability * * *.
>
> Grantor also excepts and reserves unto himself, his heirs, successors and assigns, the ownership of a certain Coal Lease between John R. Noon and Alice J. Noon, as Lessors, and Union

Carbide Corporation, as Lessee, dated as of December 22, 1964
* * *.

**{¶ 3}** In 1970 and 1977, the surface estate was again transferred, and the recorded deeds that conveyed the property contained the following exception of mineral rights:

> This Deed is subject to the prior exception and reservation contained in the Deed to the Grantors herein, From JOHN R. NOON, dated July 26, 1965 and recorded in Volume 123, at Page 404 of the Deed Records of Noble County * * *.

**{¶ 4}** In addition to specifically referencing the 1965 Deed, the deeds restated the 1965 Deed's reservation language in its entirety, expressly covering "all coal, oil and gas and all other minerals underlying the premises."

**{¶ 5}** In 2009, appellee, Jon D. Walker Jr., acquired certain parcels of the property by a fiduciary deed and a general warranty deed, each executed in Arizona and recorded in Noble County, Ohio. Each deed expressly noted that it was prepared without a title examination and made no warranty or guarantee regarding the state of its title. Each deed contained general language of exception that the transfer was subject to restrictions of record, and the fiduciary deed conveying the bulk of the property stated that the transfer was subject to all reservations of record. But the deeds transferring the property to Walker did not specifically reference the 1965 Deed, which reserved the mineral rights in Noon.

**{¶ 6}** It is clear that at some point, however, Walker became aware of the 1965 Deed, because he specifically referenced that deed and the reservation of mineral rights when, in November 2011, he sent a "Notice of Abandonment of Mineral Interest pursuant to Ohio Rev. Code § 5301.56" to Noon at his last known

address in St. Clairsville, Ohio. That notice referenced the 1965 Deed and stated that the notice related to the mineral interest reserved by Noon in the recorded deed.

{¶ 7} After sending the notice to Noon, Walker filed an Affidavit of Abandonment of Mineral Interest in January 2012 in the county recorder's office.[1] In response, Noon filed in the county recorder's office an Affidavit and Claim to Preserve Mineral Interests, which stated that he was the owner of oil, gas, coal, and other minerals and other rights reserved in the 1965 Deed and that he had "no intention to abandon" the mineral interests.

{¶ 8} In April 2012, Walker filed a declaratory-judgment action against Noon, seeking to quiet title to the mineral interest. Walker alleged that by operation of the 1989 version of Ohio's Dormant Mineral Act, former R.C. 5301.56, Sub.S.B. No. 223, 142 Ohio Laws, Part I, 981, effective March 22, 1989, the mineral interest merged with the surface estate no later than March 22, 1992,[2] meaning that the surface and mineral estates had merged before he purchased the property in 2009. Walker requested judgment quieting title to the property, including the mineral estate, in his name and canceling any reservations or leases adverse to his interests.

{¶ 9} Noon moved for summary judgment and asserted that his mineral interest was preserved regardless of whether the 1989 version of the Dormant Mineral Act or the 2006 version of the Dormant Mineral Act, 2006 Sub.H.B. No. 288, applied. Walker also moved for summary judgment and contended that because the 1989 Dormant Mineral Act was self-executing, an automatic merger of the surface and mineral estates occurred in 1992.

{¶ 10} The trial court granted summary judgment in favor of Walker.

---

[1] The 2006 version of Ohio's Dormant Mineral Act prescribes the notice procedures. R.C. 5301.56(E) through (H). Compliance with the notice and filing procedures is not disputed in this appeal.
[2] The 1989 version of Ohio's Dormant Mineral Act provided that a mineral interest would not be deemed abandoned under the statute until three years from the statute's effective date. Former R.C. 5301.56(B)(2), Sub.S.B. No. 223, 142 Ohio Laws, Part I, 981, 987.

**{¶ 11}** The Seventh District Court of Appeals affirmed. The appellate court agreed that the "mere mention of the mineral interest reservation in the 1970 and 1977 deeds did not make the mineral interest 'the subject of' the title transactions" in order for those deeds to constitute a title-transaction saving event under the 1989 or the 2006 version of the Dormant Mineral Act.[3] 2014-Ohio-1499, ¶ 27. The appellate court also concluded that the 1989 version of the act was self-executing and because there had been no saving events, the mineral interest was reunited in the surface estate on March 22, 1992. *Id.*, ¶ 39. Thus, Noon no longer held an interest in the mineral estate when he filed his claim to preserve the mineral rights in response to Walker's notice of abandonment.

**{¶ 12}** The appellate court declined to consider whether the application of the 1989 version of the Dormant Mineral Act was an unconstitutional retroactive application of substantive law, because Noon had not raised this constitutional argument below. 2014-Ohio-1499, ¶ 55-57.

**{¶ 13}** Noon died while the case was pending in the court of appeals. His daughter, Patricia J. Shondrick-Nau, as executor of Noon's estate and successor trustee of the John R. Noon Trust, was substituted as the appellant. Prior to that time, Shondrick-Nau participated in the proceedings as her father's attorney-in-fact.

**{¶ 14}** We accepted Noon's discretionary appeal on six propositions relating to the application of Ohio's Dormant Mineral Act:

> (1) The 2006 version of the [Dormant Mineral Act] is the only version * * * to be applied after June 30, 2006, the effective date of said statute.

---

[3] We analyzed the meaning of "title-transaction saving event" for the purposes of the Dormant Mineral Act in *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185.

(2) To establish a mineral interest as "deemed abandoned" under the 1989 version of the [Dormant Mineral Act], the surface owner must have taken some action to establish abandonment prior to June 30, 2006. In all cases where a surface owner failed to take such action, only the 2006 version of the [Dormant Mineral Act] can be used to obtain relief.

(3) To the extent the 1989 version of the [Dormant Mineral Act] remains applicable, the 20-year look-back period shall be calculated starting on the date a complaint is filed which first raises a claim under the 1989 version * * *.

(4) For purposes of R.C. 5301.56(B)(3), a severed oil and gas mineral interest is the "subject of" any title transaction which specifically identifies the recorded document creating that interest by volume and page number, regardless of whether the severed mineral interest is actually transferred or reserved.

(5) Irrespective of the savings events in R.C. 5301.56(B)(3), the limitations in R.C. 5301.49 can separately bar a claim under the [Dormant Mineral Act].

(6) The 2006 version of the [Dormant Mineral Act] applies retroactively to severed mineral interests created prior to its effective date.

140 Ohio St.3d 1414, 2014-Ohio-3785, 15 N.E.3d 883.

**Analysis**

***Whether the original 1989 or amended 2006 version of the Dormant Mineral Act applies***

**{¶ 15}** Shondrick-Nau's first, second, and sixth propositions can be addressed together because each asserts that the 2006, not the 1989, version of the

Dormant Mineral Act applies here. Shondrick-Nau's primary argument is that the 2006 version applies because the 1989 version of the Dormant Mineral Act was ambiguous regarding how it was to function and therefore should not be interpreted as self-executing. Walker contends that the 1989 version applies because that version of the statute made clear that the vesting of the mineral rights in the surface owner occurred automatically at the expiration of a 20-year period without a saving event because the statute did not require that notice be sent to the mineral-rights owner or require that a legal action be filed.

{¶ 16} *Corban*, __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __, resolves this issue. In *Corban*, we held that the 2006 version of the Dormant Mineral Act applies to all claims asserted after 2006 alleging that the rights to oil, gas, and other minerals automatically vested in the owner of the surface estate prior to the 2006 amendments. *Id.* at ¶ 2.

{¶ 17} Here, Walker acquired the property in 2009 subject to prior restrictions. He asserted his claim to the mineral rights underlying the surface of that property in 2012 with the filing of an "Affidavit of Abandonment of Mineral Interest" in the county recorder's office, and later that same year with legal action against Noon. There is no evidence in the record of action being taken by Walker or his predecessors prior to the effective date of the 2006 amendments to have the mineral rights deemed abandoned under the 1989 version of the Dormant Mineral Act. Thus, pursuant to *Corban*, the 2006 version of the act applies here.

***Application of the 2006 Dormant Mineral Act***

{¶ 18} In *Dodd,* we held that "a mineral-interest holder's claim to preserve filed pursuant to R.C. 5301.56(H)(1)(a) is sufficient to preclude the mineral interests from being deemed abandoned if [the claim to preserve is] filed within 60 days after notice of the surface owner's intent to declare those interests abandoned." 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 37.

**{¶ 19}** Here, in response to Walker's affidavit of abandonment, Noon timely filed an Affidavit and Claim to Preserve Mineral Interests. As we determined with respect to the mineral-interest holder's rights in *Dodd*, pursuant to R.C. 5301.56(H), a subsection that was added as part of the 2006 amendments to the Dormant Mineral Act, Noon's claim to preserve was sufficient to prevent the mineral rights from being "deemed abandoned and vested" in the surface owner.

*Remaining issues*

**{¶ 20}** Because the 2006 version of the Dormant Mineral Act applies in this case, we need not address Shondrick-Nau's third proposition of law, which sets forth the way she believes the look-back period should be calculated under the 1989 version of the Dormant Mineral Act.

**{¶ 21}** Similarly, Shondrick-Nau concedes that it is not necessary to resolve the issues raised in her fourth and fifth propositions of law if we conclude that the 1989 version of the Dormant Mineral Act does not apply here. These propositions address whether a deed transferring the surface estate that specifically excludes the previously severed mineral interest constitutes a title-transaction saving event under the 1989 version of the act. If the 1989 version of the act applied here, we would have to determine whether the statutory period passed without the occurrence of a saving event described in the 1989 version of R.C. 5301.56(B). But whether a saving event occurred is not an issue that needs to be resolved in this case, because Noon's claim to preserve his mineral rights was sufficient under the 2006 version of the act to prevent the mineral rights from being "deemed abandoned and vested" in the owner of the surface estate.

**Conclusion**

**{¶ 22}** We hold that pursuant to *Corban*, __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __, the 2006 version of the Dormant Mineral Act applies in this case. And pursuant to *Dodd*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, we hold that Noon's claim to preserve, which was timely filed with the county

recorder's office, was sufficient to preclude the mineral estate from being deemed abandoned and vested in the owner of the surface estate. We therefore reverse the judgment of the court of appeals.

Judgment reversed.

O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER, J., dissents, with an opinion.

O'NEILL, J., dissents, with an opinion.

_____

**PFEIFER, J., dissenting.**

**{¶ 23}** The majority opinion is based on this court's holding in *Corban v. Chesapeake Exploration, L.L.C.*, __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __, that the 1989 version of Ohio's Dormant Mineral Act, former R.C. 5301.56, Sub.S.B. No. 223, 142 Ohio Laws, Part I, 981 ("1989 ODMA") was not self-executing; I dissented from that holding, and I therefore dissent from the majority's holding in this case. I would affirm the judgment of the court of appeals.

**{¶ 24}** I would hold that by operation of the 1989 ODMA, John Noon's interest was deemed abandoned and was reunited with the surface interest by March 22, 1992; Noon's interest had not been preserved by a saving event in the 20 years prior to the effective date of the statute nor in the three-year grace period after the effective date of the statute, former R.C. 5301.56(B)(2), 142 Ohio Laws, Part I, at 987. The 1970 and 1977 deeds that mentioned Noon's interest—but did not transfer it—did not constitute saving events, because in those deeds, the mineral interest was not the *subject* of a title transaction under former R.C. 5301.56(B)(1)(c)(i), 142 Ohio Laws, Part I, at 986. By the time of the effective date of the 2006 version of R.C. 5301.56, there was no mineral interest remaining for Noon to preserve, so his filing of an Affidavit and Claim to Preserve Mineral Interests in 2012 was a vain act.

**{¶ 25}** But then, this dissent is a vain act. The multiple questions raised in this appeal about the functioning of the 1989 ODMA have been rendered academic by *Corban*; those questions arise only if the 1989 ODMA is self-executing—that is, if the mineral interest "deemed abandoned" automatically vested in the owner of the surface estate in the absence of a qualifying saving event. The plain language of the 1989 ODMA indicates that it was self-executing. The three appellate districts that have considered the question—the Seventh District in this case, the Fifth District in *Wendt v. Dickerson*, Fifth Dist. Tuscarawas No. 2014 AP 01 0003, 2014-Ohio-4615, and the Eleventh District in *Thompson v. Custer,* 2014-Ohio-5711, 26 N.E.3d 278 (11th Dist.)—all concluded that the 1989 ODMA was self-executing. But this court in *Corban* held to the contrary. In doing so, *Corban* has simplified the law. All it took was rewriting it.

_____

**O'NEILL, J., dissenting.**

**{¶ 26}** I joined Justice Pfeifer's learned concurring and dissenting opinion in *Corban v. Chesapeake Exploration, L.L.C.,* __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __, and I therefore disagree with the majority's holding in this case that the 2006 version of the Dormant Mineral Act, 2006 Sub.H.B. No. 288, applies. But, unlike Justice Pfeifer, I would hold that the 1977 reservation of the mineral interest by deed was a qualifying title transaction and therefore a saving event under the 1989 version of the Ohio Dormant Mineral Act, former R.C. 5301.56, Sub.S.B. No. 223, 142 Ohio Laws, Part I, 981. However, I would also hold that the mineral interest reunified with the surface estate 20 years later, in 1997. Accordingly, by the time the 2006 version of the Ohio Dormant Mineral Act became effective, John Noon had no mineral interest to preserve. It had been extinguished as a matter of law.

_____

Cardinal Law Offices and Kenneth Cardinal; and Baker, Dublikar, Beck, Wiley & Mathews and James F. Mathews, for appellee.

Bricker & Eckler, L.L.P., Matthew W. Warnock, Daniel C. Gibson, and Daniel E. Gerken, for appellant.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Samuel C. Peterson, Deputy Solicitor, urging affirmance for amicus curiae state of Ohio.

Jackson Kelly, P.L.L.C., Clay K. Keller, Sandra K. Zerrusen, and J. Alex Quay, urging reversal for amici curiae Eclipse Resources Corporation and Chesapeake Exploration, L.L.C.

_____