[Cite as *Jefferis Real Estate Oil & Gas Holdings, L.L.C. v. Schaffner Law Offices, L.P.A.*, 2017-Ohio-1013.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JEFFERIS REAL ESTATE OIL & GAS HOLDINGS, LLC, | ) | CASE NO. 14 BE 0019 |
| | ) | |
| PLAINTIFF-APPELLEE , | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| SCHAFFNER LAW OFFICES, L.P.A., DAVID K. SCHAFFNER, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Belmont County, Ohio Case No. 13CV323

JUDGMENT: Reversed and Remanded.

APPEARANCES:

For Plaintiff-Appellee: Atty. Todd M. Kildow
Atty. Robert D. Plumby
Atty. Cory M. DelGuzzo
Phillips, Gardill, Kaiser & Altmeyer, PLLC
197 West Main Street
St. Clairsville, Ohio 43950

For Defendants-Appellants: Atty. David K. Schaffner
Schaffner Law Offices, Co., L.P.A.
132 Fair Avenue, NW
New Philadelphia, Ohio 44663

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: March 17, 2017

ROBB, P.J.

{¶1} Defendants-Appellants Schaffner Law Offices, L.P.A. et al. appeal the decision of the Belmont County Common Pleas Court granting judgment on the pleadings in favor of the surface owners (nka substituted Plaintiff-Appellee Jefferis Real Estate Oil & Gas Holdings, LLC) on their claim to reunite minerals underlying their land with the surface. The trial court found a severed one-half mineral interest was abandoned and vested in the surface owners under the 1989 Dormant Mineral Act. Appellants set forth three assignments of error contesting the application of the 1989 Dormant Mineral Act. Due to recent Ohio Supreme Court decisions finding this version of the act cannot be applied to claims made after the 2006 amendments, the first two assignments of error have merit and the third assignment of error (contending the 1989 version was unconstitutional) is moot.

{¶2} Appellee suggests we uphold the judgment due to alternative theories presented below as to abandonment under the 2006 Dormant Mineral Act and/or extinguishment under the Marketable Title Act, claiming the surface owners had an unbroken chain of title for more than forty years. Appellants set forth arguments in opposition. However, the trial court did not rule on these two alternative theories. Therefore, the issues surrounding abandonment under the 2006 Dormant Mineral Act or extinguishment under the Marketable Title Act are not ripe for this court's review. The trial court's decision finding abandonment under the 1989 Dormant Mineral Act is reversed, and the case is remanded for further proceedings.

## STATEMENT OF THE CASE

{¶3} In 1936, John W. Kirk and Helen S. Kirk sold property in Belmont County but reserved one-half of the minerals. In 1987, John W. Kirk died as a resident of Texas, and an ancillary administration of his estate was filed in the Belmont County Probate Court. Helen predeceased him. The next-of-kin listed in his estate were his surviving spouse Wilma Kirk and his children: Jane Hinch, Barbara Turner, Diane Palmer, Marilyn Wright, and John D. Kirk. Barbara Turner died in 2006 and the next-of-kin listed in her estate were Edward Turner and Lenane Smith. John D. Kirk died in 2004. It is claimed none of these estate inventories mentioned the mineral interest.

**{¶4}** In 2004, the surface with its unsevered half of the minerals was transferred to the original plaintiffs-appellees as follows: 4.430 acres to Thomas J. Jefferis, Jr., Trustee; 4.463 acres to Thomas J. Jefferis, Sr., Trustee; 2.989 acres to John P. Jefferis, Trustee; 5.105 acres to Robin L. Jefferis, Trustee; and 1.102 acres to William E. Farson and Judith E. Farson. (Jefferis Real Estate Oil & Gas Holdings, LLC was substituted as Appellee on appeal).

**{¶5}** On March 16, 2013 and March 22, 2013, the surface owners published notice of abandonment in the newspaper. *See* R.C. 5301.56(E)(1) (service by certified mail to each holder, successor, or assignee; if service cannot be completed to any holder, then publication). An affidavit of abandonment was filed in the Belmont County Recorder's office on May 10, 2013. *See* R.C. 5301.56(E)(2) (at least 30 but not more than 60 days after notice of abandonment).

**{¶6}** On May 14, 2013, a claim to preserve the mineral interest was filed in the recorder's office by David K. Schaffner as counsel for Peter Watt, Richard Watt, Michael Watt, and Jenny Robinson, who are the heirs/children of Jane Hinch, daughter of John W. Kirk. *See* R.C. 5301.56(H)(1)(a) or (b) (within 60 days after notice was served or published, holder or holder's successors or assignees can file claim to preserve or affidavit identifying savings event). This filing named the successor holders to the mineral interest reserved by John W. Kirk and Helen S. Kirk as: Wilma Kirk, John D. Kirk, Jane Hinch, Barbara Turner, Diane Palmer, Marilyn Wright, the four aforenamed children of Jane Hinch, Edward Turner, Margaret R. Kirk, Karl E. Palmer, Lenane Smith, and other unidentified heirs at law of John and Helen Kirk.

**{¶7}** On May 15, 2013, similar claims were filed in the recorder's office by: Marilyn Wright (child of John W. Kirk, the original holder); Karl E. Palmer (child of Diane Palmer); Margaret R. Kirk (the widow of John D. Kirk); Lenane Smith and Edward Turner (the children of Barbara Turner). On September 4, 2013, the surface owners filed a complaint against these five claimants; also named as defendants were Attorney Schaffner (who filed the claim to preserve on behalf of the children of Jane Hinch) and Schaffner Law Offices, L.P.A. (who prepared the affidavits).

**{¶8}** The complaint sought quiet title of the severed mineral interest and a declaratory judgment finding the mineral interest abandoned under either the 1989 or the 2006 Dormant Mineral Act and extinguished under the Marketable Title Act. The complaint also alleged the claims were fraudulent and sought damages for slander of title. The surface owners asserted there were no savings events or title transactions to preserve the mineral interest. In addition, it was claimed Appellants had no standing to file a claim to preserve; they alleged the heirs are not successor holders if the record holder's estate did not list the mineral interest as an asset.

**{¶9}** On October 7, 2013, Appellants filed an answer and a counterclaim seeking a declaration that they owned the severed mineral interest. As to the 2006 Dormant Mineral Act, they alleged a failure to serve the notice of abandonment by certified mail before resorting to publication. Regardless, they pointed to their timely recorded claims to preserve under the 2006 Dormant Mineral Act. They argued against the application of the 1989 Dormant Mineral Act and alternatively claimed the interest was preserved under that version of the act. Appellants also pointed to the filing of the record holder's will in probate court in 1987 as a title transaction.

**{¶10}** On November 14, 2013, the surface owners filed a reply to the counterclaim and a motion for judgment on the pleadings. They argued the severed mineral interest automatically vested in the surface owner under the 1989 Dormant Mineral Act due to a lack of a savings event. Regarding the 2006 Dormant Mineral Act, the surface owners claimed service of the notice of abandonment was not required as to non-holders and the claim to preserve filed in the recorder's office by various heirs was ineffective as they are not successors of the holder merely because they are descendants of the holder. As to the Marketable Title Act, the surface owners argued the reservation of the mineral interest was extinguished as the minerals were severed in 1936, the root title deed of the surface was filed in 1960, and more than forty years passed with an unbroken chain of title. They claimed there were no title transactions as to the severed minerals because no mineral interest was listed in the record holder's estate.

**{¶11}** On January 13, 2014, Appellants filed their response to the motion for judgment on the pleadings. As to the 1989 Dormant Mineral Act, Appellants urged

the former statute did not call for automatic abandonment and pointed out no surface owner asserted a claim for abandonment before the 2006 Dormant Mineral Act went into effect. They asserted the use of a 1989 statute, which was repealed in 2006, to cause automatic forfeiture of their interest would be contrary to the provision in Article I, Section 19 of the Ohio Constitution: "Private property shall ever be held inviolate * * *." They also claimed the surface owners could not use the 1989 Dormant Mineral Act because they elected a remedy by publishing notice under the 2006 Dormant Mineral Act.

{¶12} As to the 2006 Dormant Mineral Act, they urged an heir can qualify as a holder or a successor to a holder, citing R.C. 5301.56(A)(1) (which defines a holder as the record holder and any person who derives their rights from or has a common source with the record holder and whose claim does not indicate it is adverse to the record holder). Appellants complained service of notice of abandonment was not attempted by certified mail before resort was made to publication. In any event, Appellants said they preserved their rights by filing timely claims to preserve, emphasizing a claim filed by one holder preserves the interest for all holders. *See Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 28, citing R.C. 5301.56(C)(2). Appellants also stated the mineral interest passed under the residuary clause of John W. Kirk's will and title passing by will or descent is a title transaction. On January 14, 2014, the surface owners replied to these arguments.

{¶13} On April 7, 2014, the trial court granted judgment in favor of the surface owners on their quiet title claim and declared they owned 100% of the minerals underlying their property. The claims to preserve were declared void. The court did not award damages and ordered both sides to pay their own costs. The trial court stated the 1989 Dormant Mineral Act was a self-executing statute by which mineral interests shall be deemed abandoned and automatically vested in the surface owners if no savings event occurred. The court found abandonment automatically occurred on March 22, 1992 (at the end of the statute's three-year grace period) as there were no savings events in the twenty years prior to that date. The court stated the mineral interest was not listed in the inventory of an estate and there was no recorded

transfer. The court concluded any passing of assets without a recording in the recorder's office could not qualify as a savings event under R.C. 5301.56.

{¶14} Appellants filed a timely notice of appeal from the April 7, 2014 judgment on the pleadings. They filed their brief on August 20, 2014. Appellee's brief was filed in October 2014. Appellants sought to stay the appeal pending the Ohio Supreme Court's decision in various Dormant Mineral Act cases. On November 17, 2014, this court granted the request to stay the appeal. The stay was lifted by this court's October 14, 2016 judgment entry.

<u>1989 Dormant Mineral Act</u>

{¶15} The 1989 Dormant Mineral Act provided a mineral interest shall be deemed abandoned and vested in the surface owner if there were no savings events within the preceding twenty years. The Act was effective on March 22, 1989 and contained a three-year grace period, making March 22, 1992 a dispositive date. The 2006 Dormant Mineral Act contained amendments providing notice to holders before abandonment and the chance to file post-notice claims to preserve, among other changes.

{¶16} Appellants set forth three assignments of error. All three assignments of error deal with the 1989 Dormant Mineral Act, arguing the 1989 version of the act: (1) cannot be applied to claims asserted after the 2006 amendments; (2) did not result in automatic vesting of mineral interests in the surface owner; and (3) was unconstitutional. Appellants conclude the 2006 Dormant Mineral Act rather than the 1989 Dormant Mineral Act is applicable.

{¶17} During the stay of this case, the Ohio Supreme Court held the 1989 Dormant Mineral Act was not self-executing and did not "automatically transfer the interest from the mineral rights holder to the surface owner by operation of law." *Corban v. Chesapeake Exploration, L.L.C.*, __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __, ¶ 26-28 (plurality); *id.* at ¶ 43, 104 (Kennedy, J., concurring in this part of decision). "Rather, a surface holder seeking to merge those rights with the surface estate under the 1989 law was required to commence a quiet title action seeking a decree that the dormant mineral interest was deemed abandoned." *Id.* at ¶ 28.

Dormant mineral interests did not automatically pass by operation of law to the surface owner pursuant to the 1989 law. Thus, as of June 30, 2006, any surface holder seeking to claim dormant mineral rights and merge them with the surface estate is required to follow the statutory notice and recording procedures enacted in 2006 by H.B. 288. These procedures govern the manner by which mineral rights are deemed abandoned and vested in the surface holder and apply equally to claims that the mineral interests were abandoned prior to June 30, 2006.

*Id.* at ¶ 31. *See also id.* at ¶ 43 (Kennedy, J., concurring) ("the 2006 version of the DMA applies to all claims asserted after June 30, 2006"). The Court also found the application of the 2006 Dormant Mineral Act to claims filed after its effective date does not impair vested rights in violation of the Retroactivity Clause. *Id.* at ¶ 32, 35.

{¶18} In another case, the Court reiterated: "In *Corban*, we held that the 2006 version of the Dormant Mineral Act applies to all claims asserted after 2006 alleging that the rights to oil, gas, and other minerals automatically vested in the owner of the surface estate prior to the 2006 amendments." *Walker v. Shondrick-Nau*, __ Ohio St.3d __, 2016-Ohio-5793, __ N.E.3d __, ¶ 16. The Court then applied its prior *Dodd* holding to find the mineral interest was not abandoned under the 2006 Dormant Mineral Act due to the timely filing of a claim to preserve after the surface owner's notice of abandonment. *Id.* at ¶ 22, citing *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147.

{¶19} Based upon *Corban* and *Walker*, the Appellants' first two assignments of error have merit. Appellants' third assignment of error (arguing the 1989 version was unconstitutional) is moot. *See, e.g., Tribett v. Shepherd*, __ Ohio St.3d __, 2016-Ohio-5821, __ N.E.3d __, ¶ 1 (where the Court heard oral arguments on the constitutionality of the 1989 version but then disposed of the case based upon *Corban*). In accordance, the mineral interest underlying the subject property was not automatically abandoned under the 1989 Dormant Mineral Act. The trial court's decision, finding the mineral interest was abandoned and automatically vested in the plaintiffs on March 22, 1992, under the 1989 Dormant Mineral Act, is reversed.

## ISSUES NOT RULED UPON BY THE TRIAL COURT

**{¶20}** A plaintiff can raise alternative theories of recovery in case one theory is not accepted by the trial court. *See, e.g., Eisenbarth v. Reusser*, 7th Dist. No. 13MO10, 2014-Ohio-3792, ¶ 38. *See generally Kamposek v. Johnson*, 11th Dist. No. 2003-L-124, 2005-Ohio-344, ¶ 26. The plaintiffs raised the 2006 Dormant Mineral Act in the complaint as an alternative to the 1989 Dormant Mineral Act. The complaint also asserted the severed mineral interest was "null and void" as the plaintiffs had an unbroken chain of title for more than forty years with a root deed recorded on October 26, 1960, citing the following portions of the Marketable Title Act: R.C. 5301.47, R.C. 5301. 49, R.C. 5301.50, and R.C. 5301.53.

**{¶21}** In 1961, Ohio enacted the Marketable Title Act in R.C. 5301.47 through R.C. 5301.56 in order to extinguish interests and claims in land existing before the root of title. *Corban*, __ Ohio St.3d __, 2016-Ohio-5796 at ¶ 17. Pursuant to R.C. 5301.50, "record marketable title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title." All such interests "are hereby declared to be null and void." R.C. 5301.50.

**{¶22}** A person who has an unbroken chain of title of record to any interest in land for forty years or more has a marketable record title to such interest. R.C. 5301.48. A marketable record title is defined as "a title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 5301.50 of the Revised Code." R.C. 5301.47(A). Root of title is defined as "that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E). The effective date of the root of title is the date it was recorded. *Id.*

**{¶23}** The record marketable title is subject to various listed interests and exceptions. R.C. 5301.49; R.C. 5301.53. For instance, the record marketable title is

subject to "[a]ny interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started * * *." R.C. 5301.49(D) ("provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 5301.50 of the Revised Code").

{¶24} A title transaction is defined as "any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage." R.C. 5301.47(F). "Record" is defined as including "probate and other official public records, as well as records in the office of the recorder of the county in which all or part of the land is situated". R.C. 5301.47(B). " 'Recording' when applied to the official public records of the probate or other court, includes filing." R.C. 5301.47(C).

{¶25} These definitions apply to "section 5301.47 to 5301.56, inclusive," and R.C. 5301.56 is the Dormant Mineral Act. Under the Dormant Mineral Act, a savings event can occur when "[t]he mineral interest has been the subject of a title transaction that has been filed or recorded in office of the county recorder of the county in which the lands are located." R.C. 5301.56(B)(3)(a). The trial court concluded no recording occurred in the Belmont County Recorder's Office, but the Marketable Title Act's extinguishment provisions do not depend on the title transaction being filed in the recorder's office. Recording in the context of R.C. 5301.49(D) includes filing in the probate court. R.C. 5301.47(B),(C).

{¶26} Appellee suggests the trial court's judgment can be upheld under the Marketable Title Act, urging the severed mineral interest was created prior to Appellee's October 26, 1960 root of title and forty years passed without any preservation under R.C. 5301.49, causing the severed interest to be extinguished under R.C. 5301.50. However, the trial court did not address the extinguishment claim filed under the Marketable Title Act. The court's findings regarding the probate estate were made in connection with its analysis of whether there was a savings event under the Dormant Mineral Act. The judgment entry did not refer to the Marketable Title Act or find the mineral interest was extinguished thereunder; nor did

it make reference to the 1960 deed alleged to be Appellee's root of title from which the forty-year period would begin to run.

{¶27} As to the 2006 Dormant Mineral Act, Appellants set forth arguments unrelated to any assignment of error in their brief; they oppose arguments set forth by Appellee below. Appellants claim the plaintiffs did not establish an attempt to serve notice by certified mail return receipt requested for each holder or each holder's successor or assignee prior to providing notice by publication. In any event, Appellants say it is undisputed a timely claim to preserve was filed. They point out a timely post-notice-of-abandonment claim to preserve filed by one of the holder's successors preserves the mineral interest for all of the successors. *See Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 28, citing R.C. 5301.56(C)(2). Appellee claims Appellants were not eligible to file a claim to preserve because the status as heirs or next-of-kin of a record holder does not make a person a holder or successor holder. Appellants quote the Dormant Mineral Act's definition of a holder as "the record holder of a mineral interest, and any person who derives the person's rights from, or has a common source with, the record holder and whose claim does not indicate, expressly or by clear implication, that it is adverse to the interest of the record holder." *See* R.C. 5301.56(A)(1). Appellants also cite Black's Law Dictionary for a definition of a successor as the person who takes over the roles, rights, or obligations of another. They conclude that an heir who is to inherit the property by will (or descent) is a successor to the holder.

{¶28} Appellee's argument (concerning Appellants' status as holders or successors of a holder) was not addressed by the trial court. The trial court found abandonment under the 1989 Dormant Mineral Act after concluding the mineral interest had not been the subject of a title transaction filed or recorded in the recorder's office within the twenty years. *See* R.C. 5301.56(B)(1)(c)(i) (which does not relate to who is a holder). The trial court's factual findings observed notice of abandonment was served by publication and claims to preserve were filed. However, the court did not rule on Appellants' eligibility to file a claim to preserve or on abandonment under the 2006 Dormant Mineral Act. As Appellants dispute an

argument made by Appellee below which was not ruled upon in the trial court, we cannot rule on the issue.

**{¶29}** In summary, the trial court entered judgment on the pleadings based upon the 1989 Dormant Mineral Act. The trial court did not rule on the validity of the claims to preserve filed under the 2006 Dormant Mineral Act. The trial court did not find the mineral interest was extinguished under the Marketable Title Act or even mention the 1960 root deed of Appellee's title. The issues raised by the parties concerning the 2006 Dormant Mineral Act and the Marketable Title Act are not ripe for our review. Two recent examples from the Supreme Court of Ohio confirm the propriety of our abstention.

**{¶30}** Where a trial court found abandonment under the 1989 Dormant Mineral Act and refused to reach issues regarding notice and a claim to preserve in cross-motions for summary judgment, this court concluded the issues were not ripe for our review. *Swartz v. Householder*, 7th Dist. Nos. 13 JE 24, 13 JE 25, 2014-Ohio-2359, 12 N.E.3d 1243, ¶ 46 citing, *e.g., Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 88-89, 585 N.E.2d 384 (1992), fn. 5; *Crites v. Anthem Life Ins. Co.*, 3d Dist. No. 4-12-21, 2013-Ohio-2145, ¶ 8; *Farley v. Chamberlain*, 4th Dist. No. 03CA48, 2004-Ohio-2771, ¶ 12 (refusing to usurp trial court's function). *See also Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360, 604 N.E.2d 138 (1992) (de novo summary judgment review does not mean the trial court need not first rule on issues presented in motions). The Ohio Supreme Court reversed this court's holding in *Swartz* as to the 1989 Dormant Mineral Act. *Swartz v. Householder*, __ Ohio St.3d __, 2016-Ohio-5817, __ N.E.3d __, ¶ 1. Significantly, the Court did not remand to this court for consideration of the issues presented under the 2006 Dormant Mineral Act, which we refused to address.

**{¶31}** Similarly, in *Taylor*, we reversed the trial court's finding of abandonment under the 1989 Dormant Mineral Act as we found a savings event. We remanded for further proceedings after refusing to address arguments under the 2006 Dormant Mineral Act. We reiterated: "because of its resolution of the 1989 DMA rolling look-back issue, the trial court never considered or ruled on the parties' arguments surrounding notice under the 2006 DMA. Therefore, this issue is not ripe for our review." *Taylor v. Crosby*, 7th Dist. No. 13 BE 32, 2014-Ohio-4433, ¶ 47, citing *Tree*

*of Life Church v. Agnew*, 7th Dist. No. 12 BE 42, 2014-Ohio-878, ¶ 27 and *Conny Farms, Ltd. v. Ball Resources, Inc.*, 7th Dist. No. 09 CO 36, 2011-Ohio-5472, ¶ 15. This decision was affirmed by the Ohio Supreme Court on the basis of the *Corban* and *Walker* cases, and the cause was "remanded to the trial court for a determination regarding compliance with the 2006 version of the Dormant Mineral Act." *Taylor v. Crosby*, __ Ohio St.3d __, 2016-Ohio-5820, __ N.E.3d __, ¶ 1. The Court thus upheld our decision to refrain from addressing the issues that were unaddressed by the trial court.

**{¶32}** In accordance, the trial court's entry of judgment on the pleadings under the 1989 Dormant Mineral Act is reversed due to recent Supreme Court law. We refrain from addressing arguments on abandonment under the 2006 Dormant Mineral Act and extinguishment under the Marketable Title Act as the trial court did not rule on these arguments. The case is remanded for determination by the trial court after new motions are filed based upon recent precedent which may relate to the unaddressed issues. *See Warner v. Palmer*, 7th Dist. No. 14 BE 0038, 2017-Ohio-___ (reversing the entry of judgment on the pleadings).

**{¶33}** The trial court's judgment finding abandonment under the 1989 Dormant Mineral Act is hereby reversed, and the case is remanded for further proceedings.

Donofrio, J., concurs.

Waite, J., concurs.