[Cite as *Davis v. Consolidation Coal Co.*, 2017-Ohio-5703.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ROBERT E. DAVIS, et al. | ) | CASE NO. 13 HA 0009 |
| | ) | |
| PLAINTIFFS-APPELLANTS | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CONSOLIDATION COAL CO. | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from the Court of Common
Pleas of Harrison County, Ohio
Case No. CVH 2011-0081

JUDGMENT:                    Affirmed.

APPEARANCES:
For Plaintiffs-Appellants:        Atty. Brad L. Hillyer
Connolly, Hillyer, Lindsay & Ong, Inc.
201 N. Main St.
P.O. Box 272
Uhrichsville, Ohio  44683

For Defendant-Appellee:         Atty. Geoffrey B. Mosser
232 South Main Street
P.O. Box 265
Cadiz, Ohio  43907-0265

Atty. Michael D. Dortch
Atty. Richard R. Parsons
Kravitz, Brown & Dortch, LLC
65 East State Street
Suite 200
Columbus, Ohio  43215

JUDGES:
Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated:  June 29, 2017

WAITE, J.

**{¶1}** Robert E. Davis, James Albright and Barbara Albright (collectively referred to as "Appellants") appeal an August 28, 2013 Harrison County Common Pleas Court decision to grant summary judgment in favor of Appellee Consolidation Coal Co. ("Consolidation Coal") in this case involving mineral rights. Appellants argue that they obtained the rights at issue pursuant to operation of the 1989 Dormant Mineral Act ("DMA"). In the event that the 2006 DMA applies, Appellants argue that Consolidation Coal failed to show that a title transaction preserved its interests. For the reasons provided, Appellants' arguments are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

**{¶2}** This appeal involves a dispute between the parties concerning the ownership of mineral rights located beneath 77.75 acres of land in Archer Township, Harrison County. The mineral rights have a long and convoluted history as a result of multiple oil and gas leases and deeds reserving certain subsurface ownership rights.

**{¶3}** The first relevant event pertaining to these rights is an oil and gas lease between David Welsh and A.T. Moore. The lease was recorded on October 11, 1901. The lease had a two-tiered habendum clause containing a primary term and a secondary term. According to the lease, the primary term was five years. The secondary term was to continue so long as oil and gas was produced in paying quantities, but the lease could not exceed "the full term of twenty (20) years from the date hereof." (10/11/1901 Lease.) The lease term was extended in 1919 for five additional years, which extended the end date of the secondary term to 1926.

(1/4/1919 Extension of Oil and Gas Lease.) The lease extension was recorded on April 18, 1919.

{¶4} Sometime thereafter, John M. Wheeler obtained the property. On October 23, 1920, Wheeler deeded the property to Howard Coffland. Within the deed, Wheeler reserved certain mineral rights:

RESERVING AND EXCEPTING from both of the above described tracts of land all producing oil and gas wells on the premises aforesaid, together with the right to drill and operate two additional wells on the second tract above described and all proceeds therefrom to be the property of the Grantors in this deed.

(10/23/1920 Deed)

{¶5} At some point, Consolidation Coal obtained the property. On October 9, 1967, Consolidation Coal deeded the property to Appellant Robert E. Davis and his wife, Marilyn Jean Davis. The deed included the following language:

EXCEPTING AND RESERVING to the Grantor herein, its successors and assigns, all right, title and interest in and to the oil, gas and other minerals not heretofore Excepted and Reserved by predecessors-in-title of the Grantor herein, together with the right to explore, operate and extract the same by any method now or hereafter used.

(10/9/1967 Deed, p. 3.) The deed was recorded on October 16, 1967.

{¶6} On January 15, 1976, the Davises transferred their deed into a joint and survivorship deed. On September 25, 1981, Consolidation Coal recorded an oil and

gas lease with Republic Steel. Republic Steel later changed its name to Kelt Ohio, Inc. ("Kelt").

**{¶7}** Marilyn Jean Davis died on July 22, 1990. On August 10, 1990, Robert E. Davis recorded an affidavit acknowledging his wife's death and became sole owner of the property. On February 27, 1991, Davis deeded one acre of the property to his daughter, Barbara, and her husband, James Albright. The deed was recorded on February 28, 1991.

**{¶8}** On June 24, 1992, Kelt partially released all right, title, and interest that it had obtained through its oil and gas lease with Consolidation Coal. Pursuant to the release, the leasehold reverted back to Consolidation Coal. The release was recorded on June 29, 1992.

**{¶9}** On February 22, 2011, Attorney Shawn P. Lindsay sent Consolidation Coal a "Notice of Intent to Declare Oil and Gas Mineral Interests" pursuant to R.C. 5301.56 on behalf of the Albright family. In response, on March 21, 2011, Consolidation Coal recorded a "Notice of Claim and Preservation of Mineral Interest in Land" affidavit pursuant to R.C. 5301.56(C).

**{¶10}** On August 3, 2011, Appellants filed a complaint seeking declaratory judgment and quiet title against Consolidation Coal. The complaint alleged that Consolidation Coal abandoned its subsurface rights in the 76.75 acres owned by Davis and the one acre owned by the Albright family. On October 4, 2011, Consolidation Coal filed an answer and a counterclaim. On July 6, 2012, Appellants filed a motion for summary judgment. On August 8, 2012, Consolidation Coal filed a

document titled "COMBINED CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM CONTRA PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT." Consolidation Coal also filed a motion to strike several of Appellants' exhibits. On August 28, 2013, the trial court granted Consolidation Coal's cross-motion for summary judgment and denied Appellants' motion for summary judgment. This timely appeal followed.

Summary Judgment

{¶11} An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

{¶12} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the

nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.,* 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

**{¶13}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED IN FINDING THAT CONSOLIDATION COAL COULD FURTHER RESERVE MINERALS IN SPITE OF A PREVIOUS MINERAL RESERVATION WHICH HAD YET TO BE REMOVED FROM RECORD.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN FINDING THAT CONSOLIDATION COAL COULD LEASE MINERALS DESPITE A VALID LEASE BETWEEN PREDECESSORS IN TITLE.

**{¶14}** Appellants' first two assignments of error rely on application of the 1989 version of the DMA. In both assignments, Appellants argue that Consolidation Coal never held a valid interest in the minerals, as two of its predecessors had already reserved those interests. Appellants argue that the Welsh/Moore lease reserved mineral rights, leaving no mineral interests for Consolidation Coal. Appellants further argue that the Wheeler deed reserved and excepted all producing wells and the right to drill two additional wells on the property. In order to obtain an interest in the minerals, Appellants argue that Consolidation Coal would have to have acquired those interests through the 1989 DMA. As Consolidation Coal did not, Appellants argue that Consolidation Coal never held a valid interest in the minerals and lacked the ability to enter into the lease with Republic Steel/Kelt. Hence, the lease between Consolidation Coal and Republic Steel/Kelt is invalid and cannot be construed as a savings event under the 1989 DMA. Appellants contend that the mineral rights vested in them pursuant to the 1989 DMA once they notified Consolidation Coal of their intent to declare the mineral interests abandoned.

**{¶15}** In response, Consolidation Coal argues that the Welsh lease and Wheeler deed reserved less than the entire subsurface estate and, regardless, it is questionable whether these entities continue to hold an interest. Consolidation Coal explains that the Welsh lease was signed in 1901 and was expressly limited to twenty

years, including the secondary term. Consolidation Coal recognizes that the lease was extended for five years but notes that the extension would have expired, at the latest, in 1926. Even if the Welsh lease somehow maintains an interest in the minerals, Consolidation Coal argues that it reserved all mineral rights not held by the Welsh lease. Consolidation Coal notes that the Wheeler deed reserved the wells that were producing in 1920 (excluding the producing Welsh wells) and the right to drill two additional wells. Consolidation Coal urges that this reservation encompassed less than the entire mineral estate. As to the argument over which version of the DMA applies, Consolidation Coal contends the 2006 version controls because Appellants' complaint was filed after its effective date. Additionally, Consolidation Coal claims that at least three savings events occurred which have preserved its interests.

**{¶16}** Appellants' arguments are predicated on the 1989 DMA. The Ohio Supreme Court held:

> [A]s of June 30, 2006, any surface holder seeking to claim dormant mineral rights and merge them with the surface estate is required to follow the statutory notice and recording procedures enacted in 2006 by H.B. 288. These procedures govern the manner by which mineral rights are deemed abandoned and vested in the surface holder and apply equally to claims that the mineral interests were abandoned prior to June 30, 2006.

*Stalder v. Bucher,* 7th Dist. No. 14 MO 0010, 2017-Ohio-725, ¶ 10, quoting *Corban v. Chesapeake Exploration, L.L.*C., __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __, ¶ 31. The Supreme Court also held that the provisions of the 1989 DMA were not self-executing and did not serve to automatically transfer ownership rights of dormant minerals by operation of law. *Stalder* at ¶ 10, citing *Corban* at ¶ 28.

**{¶17}** Appellants filed their claim on August 3, 2011. As such, the 2006 version of the DMA controls. Thus, any arguments pertaining to the 1989 DMA are moot.

**{¶18}** As to the issue of whether Consolidation Coal holds an interest, the rights reserved by the Welsh lease were set to expire in 1926 and any mineral interests reserved by Welsh reunited with the surface interest pursuant to the habendum clause. As to the Wheeler deed, less than the entire mineral estate was reserved. The deed reserved only the producing wells and the right to drill two additional wells. Even if the reserved wells are still producing, at least part of the mineral estate was available to Consolidation Coal.

**{¶19}** Accordingly, Appellants' arguments are without merit and their first and second assignments of error are overruled.

ASSIGNMENT OF ERROR NO. 3

A RELEASE OF LEASE IS NOT A TITLE TRANSACTION AS CONTEMPLATED BY THE DEFINITION OF A TITLE TRANSACTION.

**{¶20}** Appellants argue that even if the 2006 DMA applies, Kelt's partial release of the lease with Consolidation Coal and the reversion back to Consolidation

Coal was not a title transaction. Appellants argue that a release does not affect title to an interest in the land, it merely voids an encumbrance on the land. As there has been twenty years of inactivity and Appellants complied with the notice provisions of the 2006 DMA, Appellants contend that they are entitled to relief pursuant to the 2006 DMA.

{¶21} In response, Consolidation Coal argues that the Kelt release falls within the definition of a title transaction. Consolidation Coal explains that a title transaction is defined as "*any* transaction *affecting* title to any interest in land…" (Emphasis sic.) (Appellee's Brf., p. 7.) Consolidation Coal argues that the release terminated the rights held by Kelt and conveyed those rights back to Consolidation Coal. Consolidation Coal notes that the release was properly recorded in the county recorder's office in the county where the minerals are located. In the alternative, Consolidation Coal argues that it preserved its interest by properly filing an affidavit of preservation.

{¶22} As discussed within Appellants' first and second assignments of error, the 2006 DMA controls this case. Pursuant to R.C. 5301.56(B)(3):

Within the twenty years immediately preceding the date on which notice is served or published under division (E) of this section, one or more of the following has occurred:

(a) The mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located.

(b) There has been actual production or withdrawal of minerals by the holder from the lands, from lands covered by a lease to which the mineral interest is subject, from a mine a portion of which is located beneath the lands, or, in the case of oil or gas, from lands pooled, unitized, or included in unit operations, under sections 1509.26 to 1509.28 of the Revised Code, in which the mineral interest is participating, provided that the instrument or order creating or providing for the pooling or unitization of oil or gas interests has been filed or recorded in the office of the county recorder of the county in which the lands that are subject to the pooling or unitization are located.

(c) The mineral interest has been used in underground gas storage operations by the holder.

(d) A drilling or mining permit has been issued to the holder, provided that an affidavit that states the name of the permit holder, the permit number, the type of permit, and a legal description of the lands affected by the permit has been filed or recorded, in accordance with section 5301.252 of the Revised Code, in the office of the county recorder of the county in which the lands are located.

(e) A claim to preserve the mineral interest has been filed in accordance with division (C) of this section.

(f)  In the case of a separated mineral interest, a separately listed tax parcel number has been created for the mineral interest in the county auditor's tax list and the county treasurer's duplicate tax list in the county in which the lands are located.

**{¶23}** The trial court determined that the recorded release constituted a title transaction and ruled that Consolidation Coal preserved its interests pursuant to R.C. 5301.56(B)(3)(a).  The Ohio Supreme Court recently held that an unrecorded release of an oil and gas lease is not a title transaction constituting a savings event under R.C. 5301.56(B)(3)(a).  *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 81.  However, the Court emphasized that it was solely addressing unrecorded releases and acknowledged that a recorded release would require a different analysis.  *Id.* at ¶ 74.

**{¶24}** The *Buell* Court discussed two Ohio common pleas court cases involving recorded releases, one of which is the instant case.  *Id.* at ¶ 72, citing *Schucht v. Bedway Land & Minerals Co.,* Harrison C.P. No. CVH 2012-0010, 2014 WL 6709949 (Apr. 21, 2014) and *Davis v. Consolidation Coal Co.*, Harrison C.P. CVH-2011-0081 (Aug. 28, 2013).  *Buell* distinguished these cases from its holding because the two cases involve a recorded release and reversion of rights.  The *Buell* Court explained that "[w]hen an oil and gas lease expires by its terms or by operation of law, * * * there is no record notice on the chain of title that the mineral rights have reverted to the lessor unless the lessee takes the additional step of recording a formal release."  *Id.* at ¶ 75.  An unrecorded lease "does not provide notice of the

*actual* occurrence of the lease expiration and the reversion of rights in the lessor." (Emphasis sic.) *Id.* at ¶ 80. The Court noted that it is the lack of notice in the case of an unrecorded reversion that conflicts with the DMA's requirement that a title transaction must be filed or recorded in the county recorder's office. *Id.* at ¶ 74.

**{¶25}** Here, however, the release was recorded. The release provides notice of both the expiration of the lease and the reversion of rights to the lessor. This would serve to address concerns regarding notice of the release or the recording requirement within the 2006 DMA. Hence, release of an oil and gas lease with a reversion such as we find in the instant matter is a title transaction and serves to preserve Consolidation Coal's mineral interests pursuant to R.C. 5301.56(B)(3)(a).

**{¶26}** Additionally, Consolidation Coal preserved its rights to the mineral interests in dispute pursuant to R.C. 5301.56(C), (H)(1)(a). According to the Ohio Supreme Court, "a mineral-interest holder's claim to preserve filed pursuant to R.C. 5301.56(H)(1)(a) is sufficient to preclude the mineral interests from being deemed abandoned if filed within 60 days after notice of the surface owner's intent to declare those interests abandoned." *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 37. See also *Walker v. Shondrick-Nau*, 149 Ohio St.3d 282, 2016-Ohio-5793, 74 N.E.3d 427.

**{¶27}** On March 21, 2011, Consolidation Coal recorded an affidavit titled "NOTICE OF CLAIM AND PRESERVATION OF MINERAL INTEREST IN LAND." The affiant was Robert M. Belesky, vice-president of Consolidation Coal. Within the affidavit, Belesky averred that Consolidation Coal reserved its rights within the 1967

deed to Robert E. and Marilyn Jean Davis. He further averred that Consolidation Coal did not intend to abandon these interests, rather, it intended to preserve its mineral interests "indefinitely."

**{¶28}** The Belesky affidavit was filed twenty-nine days after Appellants filed a notice of intent to declare the interests abandoned. This record reflects that Consolidation Coal has preserved its mineral interests pursuant to R.C. 5301.56(C), (H)(1)(a). Accordingly, Appellants second assignment of error is without merit and is overruled.

## Conclusion

**{¶29}** Appellants argue that Consolidation Coal failed to preserve its interests in the mineral rights under both the 1989 and 2006 DMA. Pursuant to *Corban*, the 2006 DMA controls this matter. The record demonstrates that Consolidation Coal did preserve its interests pursuant to R.C. 5301.56(B)(3)(a), (C), and (H)(1)(a). As such, Appellants' arguments are without merit and the judgment of the trial court is affirmed.

DeGenaro, J., concurs.

Robb, P.J., concurs.