[Cite as *Soucik v. Gulport Energy*, 2019-Ohio-491.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

### CHARLES B. SOUCIK ET AL.,

Plaintiffs-Appellees,

v.

### GULFPORT ENERGY CORPORATION ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 BE 0022**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 16 CV 0401

**BEFORE:**
Kathleen Bartlett, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
REVERSED AND REMANDED

---

*Attys. Ilya Batikov and Peter Lusenhop*, 52 East Gay Street, P.O. Box 1008, Columbus, Ohio 43216-1008, for Appellants and

*Atty. Todd Kildow*, 250 West Main Street, Suite A, St. Clairsville, Ohio 43950, for Appellees.

Dated: February 7, 2019

**BARTLETT, J.**

{¶1}   Defendant-Appellant, Gulfport Energy Corp. appeals the decision of the Belmont County Common Pleas Court granting summary judgment in favor of Plaintiffs-Appellees, Charles B. Soucik, *et al.*, on their claims under the Dormant Mineral Act (DMA) and Marketable Title Act (MTA), and denying summary judgment on the breach of lease issue.   On appeal, Gulfport argues that the trial court erred in determining that the outstanding royalty interests were abandoned and/or extinguished by operation of the 2006 version of the DMA, R.C. 5301.56, and the MTA, R.C. 5301.47, *et seq.,* and therefore granting summary judgment in the Souciks' favor.

{¶2}   Appellant also appeals the decision of the trial court denying summary judgment in its favor on the question of whether the parties' oil and gas lease authorized Appellant to place royalty payments attributable to the outstanding royalty interests into a suspense account based upon Appellant's assertion that the Appellees did not have title to the outstanding royalty interests at the time the payments were placed in the suspense account.

{¶3}   For the following reasons, Appellant-Gulfport's first assignment of error has merit, warranting a remand to the trial court for further proceedings.

### Facts and Procedural History

{¶4}   The present action covers two separate parcels of land, Parcel No. 37-00420.000 which comprises 35.1623 acres (referred to herein as the 35 acre parcel), and Parcel No. 37-00555.000 which comprises 94.4915 acres (referred to herein as the 94 acre parcel).

{¶5}   Appellees were the owners of 129.65 acres of property which comprised the two tracts of land.  The Appellees subsequently conveyed the surface of the 35 acres to Trevor T. Swallie and Tyler M. Swallie, by General Warranty Deed dated September 5, 2014, and filed for record on September 11, 2014 in Volume 503, Page 541, of the Official Records of Belmont County, Ohio, in which they reserved "any and all oil, gas and other mineral rights derived from any and all subsurface formations, including any abandoned rights." (Complaint at ¶ 21-22).  The surface real estate of the

94 acres was conveyed to James Michael Carter and Laurel Lee Carter by General Warranty Deed dated January 29, 2014, and filed for record on January 29, 2014 in Volume 449, Page 610, of the Official Records of Belmont County Ohio, in which Appellees reserved "any and all oil, gas and other mineral rights derived from any and all subsurface formations, including any abandoned rights, not heretofore excepted reserved, or conveyed." (Complaint at ¶ 38-39).

### The 35 Acre Parcel

{¶6}    The 35 acre parcel was a part of the 298 acres from which one-half of the royalty of all oil and one-half of all rents from wells producing gas was reserved by Catherine Cumminskey,[1] Mary F. Cumminskey, Margaret Haren and Charles C. Haren, in the deed dated October 12, 1909, and filed for record on December 6, 1909, in Volume 178, at page 529, Belmont County Deed Records. (JE at ¶ 1)

{¶7}    The 35 acre parcel was a part of the 165.83 acres from which three fourths of the royalty of all oil and three fourths of all rents from wells producing gas were reserved by Ray Depew and Mayme Depew, in the deed dated December 18, 1909, and filed for record in Deed Book 179, at page 228.  (JE at ¶ 2).

{¶8}    The 35 acre parcel was also a part of the 20 acres from which all of the oil and gas was reserved by Ray Depew and Mayme Depew, by deed dated March 29, 1919, filed for record April 22, 1919, and recorded in Volume 220, at page 125 of the Belmont County Deed Records.

{¶9}    On September 8, 2011, Appellees executed an oil and gas lease with Appellant, which provided for a primary term of five (5) years.  (Complaint, Exs. L & M).

{¶10} On September 22, 2011, Appellees served Notice of Abandonment by publication regarding the severed oil and gas interests in the 35 acre parcel.

{¶11} On November 1, 2011, Appellees filed an Affidavit of Abandonment for the 35 acre parcel.

{¶12} On November 21, 2011, Affidavits and Notices of Non-Abandonment were filed by Carl Anderson Williams, Jr. (as power of attorney for Carl Anderson Williams, Sr.), Levana Ellen Paduch, and Susan Christine Busey (as heirs of Mary F.

---

[1] There are multiple spellings used throughout the deeds and documents of this name.  Unless otherwise noted, "Cummiskey" will be used herein.

Cummiskey).  (Complaint, ¶ 14; Gulfport Opp. To MSJ, Winzeler Aff. at Exs. F, G, H).

{¶13}  On November 21, 2011, an "Affidavit, Claim to Preserve Mineral Interests and Oil and Gas Rights Interests (Affidavit of Claim)" was filed by William R. Parr on behalf of Charles Gleason Haren, Jr., George Richard Ahrendts, Jr., Cheryl Jo Thompson, L.D. Jenkins c/o Willow Point Corporation, Willow Point Corporation as "holders and heirs and successors to the holders" of the mineral, oil and gas interests. (Complaint, Ex. P).

{¶14}  On December 14, 2011, a Notice of Abandonment & Affidavit Vesting Mineral Interest in Surface Owner was recorded on behalf of Appellees.  (Gulfport Opp. To MSJ, Winzeler Aff. at Ex. I).   The Notice/Affidavit states that the Notice of Abandonment was served by publication, and that "three (3) of the alleged heirs of Mary F. Cumminskey have served the surface owners with invalid claims in an attempt to preserve the mineral interests subject of the Notice of Abandonment."  (Gulfport Opp. To MSJ, Winzeler Aff., Ex. I at ¶ 7).  It further states "the persons allegedly having a right or claim to the oil and gas and mineral rights to the subject property did not file a claim to preserve their interest in land pursuant to ORC 5301.51-52 in the forty years subsequent to the filing of the severance deeds."  (*Id.* at ¶ 8).  Further, "[t]hat the claims filed by Carl Anderson Williams, Jr., Susan Christine Busey and Levana Ellen Paduch on November 21, 2011 in Official Records Volume 295, at pages 853, 857, and 861, respectively, failed to identify an event described in division (B)(3) of ORC 5301.56[2]; therefore, pursuant to 5301.56 (H)(2), 'the owner of the surface of the lands subject to the interest who is seeking to have the interest deemed abandoned and vested in the owner shall cause the county recorder of each applicable county to memorialize the

---

[2] This statement implies that the claims to preserve that were filed after the Notice of Abandonment was published were insufficient to preserve the interest because they were not filed within the forty years after the severance deed (referencing the 40 year period of the MTA rather than the 20 year DMA period).  The "plain language of R.C. 5301.56(H) permits either a claim to preserve the mineral interest or an affidavit that identifies a saving event that occurred within the 20 years preceding notice." *Bayes v. Sylvester,* 7th Dist. 13 MO 0020, 2017-Ohio-4033, ¶ 22, citing *Dodd v. Croskey,* 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 30.  The *Dodd* Court stated that allowing the claim to preserve after the notice of abandonment furthers legislative purpose because it describes an identifiable mineral-interest holder who presents a chain of title from which that holder claims interest in the mineral rights (noting that the surface owner can challenge the accuracy of the mineral-interest holder's claim, but that is outside the operation of the DMA, which addresses only whether the surface owner can employ the act's provisions to deem the mineral rights abandoned, reunite them with the surface rights and vest in the surface owner).  *Id.* at ¶36.

record on which the severed mineral interest is based with the following: 'This mineral interest abandoned pursuant to affidavit of abandonment recorded in volume * * * page * * * " (*Id.* at ¶ 9). The Notice/Affidavit further stated "[t]herefore, pursuant to ORC 5301.56(H) NOTICE IS HEREBY PROVIDED that **this mineral interest abandoned pursuant to Affidavit of Abandonment recorded in O.R. Volume 291, at page 949 is deemed abandoned and is vested in the surface owners, Charles B. Soucik and Laurie L. Soucik."** (*Id.* at ¶ 10).

**{¶15}** On March 11, 2014, a Quit-Claim Deed was recorded with Belmont County at OR Book 463, Page 147-154, which granted "all of their interest in the oil and gas, including any royalty interest they may hold, of every kind and description, underlying the [35 acre parcel] from Susan Christine Busey, Levana Ellen Paduch, Karen L. Luther, Gregory R. Gee, Michael P. Gee, and Carl Anderson Williams, Jr., to Charles B. Soucik and Laurie L. Soucik. (Complaint, Ex. D).

**{¶16}** On September 5, 2014, Appellees conveyed the surface of the 35 acre parcel to Trevor T. Swallie and Tyler M. Swallie, by General Warranty Deed, filed for record on September 11, 2014 in Volume 503, Page 541 of the Official Records of Belmont County, Ohio. Appellees reserved any and all oil, gas and other mineral rights derived from any and all subsurface formations, including any abandoned rights, when they conveyed said surface real estate by deed recorded in Official Records Volume 503, page 541.

### The 94 Acre Parcel

**{¶17}** Appellees were the owners of approximately 94.4915 acres of real estate situated in Section 35, Township 7 and Range 6, Somerset Township, Belmont County, Ohio and having Auditor's Parcel No. 37-00555.000.

**{¶18}** The 94 acre parcel was part of the 106¾ acres from which one-sixteenth (1/16) of all the oil that may be mined from said premises was reserved by John J. Jefferies, a/k/a J.J. Jefferis, in Warranty Deed dated April 20, 1903, filed for record April 23, 1903, and recorded in Volume 144, page 281 of the Belmont County Deed Records. (Complaint, Ex. F).

**{¶19}** Pursuant to a Warranty Deed dated April 1, 1910, filed for record May 20, 1910, and recorded in Volume 180, at page 12, of the Belmont County Deed records,

Nancy Jefferis, widow, conveyed said property to Peter Butler, including the right to drill for oil or gas through the No. 8 seem of coal. Said deed excepted one-half of the royalty on oil underlying the premises of J.J. Jefferis. (Complaint, Ex. G).

{¶20} On November 1, 2011, an Affidavit of Abandonment was filed at O.R. Volume 291, Page 953 in the Belmont County Records which included a copy of the September 29, 2011 proof of publication regarding the severed oil and gas interest in the 94 acre parcel. The proof of publication identified "John J. Jefferis, J. J. Jefferis, Sarah Jefferis, Thomas Jefferis, Nancy Jefferis, Nettie Nye Dawson and Richard W. Dawson," and "their unknown heirs, devisees, executors, administrators, relicts, next of kin, and assigns." (Winzeler Aff., Ex. H).

{¶21} No claims were filed and served within sixty (60) days of the publication of Notice of Abandonment. (Complaint, ¶ 32).

{¶22} On November 29, 2011, a Notice of Abandonment & Affidavit Vesting Mineral Interest in Surface Owner was filed for record in Official Records Book 297, page 164, Belmont County Records. (JE, ¶ 33). The Notice/Affidavit stated that a Notice of Abandonment was served by publication on September 29, 2011, that sixty (60) days had passed since publication and none of the owners of the severed oil and gas mineral interest had served a claim to preserve the mineral interests, and that "pursuant to ORC 5301.56(H) NOTICE IS HEREBY PROVIDED that this mineral interest abandoned pursuant to Affidavit of Abandonment recorded in O.R. Volume 291, at page 953 is deemed abandoned and is vested in the surface owners, Charles B. Soucik and Laurie L. Soucik." (Gulfport Opp. To MSJ, Winzeler Aff., Ex. I at ¶ 5-7).

{¶23} On January 29, 2014, the surface real estate of the 94 acres was conveyed to James Michael Carter and Laurel Lee Carter by General Warranty Deed filed for record in Volume 449, Page 610, of the Official Records of Belmont County Ohio, in which Appellees reserved "any and all oil, gas and other mineral rights derived from any and all subsurface formations, including any abandoned rights, not heretofore excepted reserved, or conveyed." (Winzeler Aff., Ex. K).

{¶24} On October 7, 2016, Appellees recorded a Notice of Failure to File and Abandonment Vesting Mineral Interest in Surface Owner at OR Book 643, Page 458-60, Belmont County Records. (Complaint, Ex. J). The Notice of Failure to File states "this

Notice is being filed at this late date because the Notice filed on November 29, 2011, in O.R. Volume 297, Page 164, inadvertently omitted a request that the Recorder place a marginal notation on Deed Volume 144, Page 281, stating that 'This mineral interest abandoned pursuant to Affidavit of Abandonment recorded in O.R. Volume 291, at Page 953.'"

### The Underlying Litigation

{¶25} Appellees filed their Complaint to Quiet Title, for Declaratory Judgment and Liquidated Damages on October 14, 2016.[3]  The Complaint alleged claims pursuant to breach of contract, Marketable Title Act (as to the 94 acre parcel), Marketable Title Act (as to the 35 acre parcel), liquidated damages, declaratory judgment, and a sixth claim for relief which is untitled but appears to raise issues as to whether there were any proper preservation of interests, allegations directed toward an Affidavit filed by William R. Parr which Appellees claimed to be false, and general references to claims to preserve under R.C. 5301.56.  Appellees sought an order that Appellant breached the lease agreement for failure to pay royalties due; a declaration under the Marketable Title Act that the oil, gas and royalty interests were null and void and all rights vested in the Appellees; a declaration that the oil, gas and royalties were abandoned and vested pursuant to R.C. 5301.56(H)(2)(c); a declaration that the reservations are not notice to the public of the existence of the mineral interest or of any rights under them, and an order that the record of said reservations shall not be received as evidence in any court on behalf of the former holders or former holders' successors or assignees as against the Plaintiffs.  Appellees also sought relief in the form of liquidated, compensatory, and punitive damages; reimbursement of costs and attorney fees; and an order declaring the Affidavit of William Parr as null and void.

{¶26} Agreed Orders were subsequently filed dismissing Cheryl Jo Thompson (11/15/16 Order), George Richard Ahrendts, Jr. (11/28/16 Order), L.D. Jenkins, Gentry,

---

[3] The Complaint named the following Defendants:  Appellant Gulfport Energy Corporation, Rhino Exploration LLC, Windsor Ohio LLC, Charles Gleason Haren, Jr., George Richard Ahrendts, Jr., Cheryl Jo Thompson, L.D. Jenkins, Willow Point Corporation, and Gentry, LLC.  These were the individuals and entities listed as "holders" in the Affidavit/Claim filed by William Parr (Complaint, Ex. P) with regard to the reserved interests (with the exception of Rhino Exploration LLC and Windsor Ohio LLC, who were named as a result of an assignment of Leases with Gulfport dated December 31, 2012, filed for record January 7, 2013, and recorded in Official Records Volume 364, at page 348, Belmont County Records).  (Complaint, ¶ 124).

LLC, Willow Point Corporation (in consideration of a quit claim deed conveying and releasing any and all interests) (12/22/16 Order), and Charles Gleason Haren, Jr. (12/27/16 Order). All of the Agreed Orders contain the same language: "Defendants * * * do not have, nor have they ever had, an interest in the oil, gas and/or royalties from said oil and gas underlying the real estate subject of Plaintiff's complaint, which is described as being 35.623 acres having Auditor's Parcel No. 37-00420.000." See Agreed Orders.

**{¶27}** Appellees filed their Motion for Summary Judgment on March 2, 2017.

**{¶28}** Appellant filed a Motion to Strike the Expert Affidavit of Richard A. Myser, a Memorandum in Opposition to Appellees' Motion for Summary Judgment, and a Cross-Motion for Summary Judgment on March 23, 2017.

**{¶29}** Appellees filed a Memorandum in Opposition to the Cross-Motion for Summary Judgment on April 10, 2017.

**{¶30}** Appellant filed its Reply in Support of its Cross-Motion for Summary Judgment on April 18, 2017.

**{¶31}** The trial court held a hearing on the pending summary judgment motions on April 19, 2017, and instructed plaintiffs to prepare the entry as to their summary judgment, "ruling that the plaintiffs are the undisputed owners of the subject outstanding interest. Based upon both the Abandoned Minerals Act and the Marketable Title Act." (Tr., p. 26). It appears from the trial court's judgment entry that the decision was mostly based on the MTA, as no findings were made with regard to the 2006 DMA. The trial court stated at the hearing that "[t]he court is ruling that the plaintiffs are the undisputed owners of the subject outstanding interest. Based upon both the Abandoned Minerals Act and the Marketable Title Act." (Tr., p. 26).

**{¶32}** The trial court found that the Appellees' root of title for the 35 acre parcel was filed for record on July 7, 1967, in Deed Volume 498, at page 262, Belmont County Deed records. (JE at ¶ 20). The root of title includes the following language: SECOND EXCEPTION: Oil and gas royalties and rentals as heretofore reserved, sold and conveyed.

**{¶33}** The trial court found the root of title for the 94 acre parcel was filed for record April 14, 1972 at Volume 530, page 435, Belmont County Deed records. (JE at ¶

37). The root of title contains the following: ALSO EXCEPTING one half of the royalty on oil underlying said premises belonging to J.J. Jefferis.

{¶34} The trial court issued a separate May 2, 2017 judgment entry which granted summary judgment in favor of Appellant as to a separate criminal theft claim filed by Appellees and overruled summary judgment on the issue of whether Appellant breached its lease with Appellees by placing royalty payments into suspense. As Appellees have not filed a cross appeal in this matter, the issue of the criminal theft claim is not properly before us on appeal.

### Standard of Review

{¶35} When reviewing a trial court's decision granting summary judgment, an appellate court conducts a *de novo* review. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). In order to grant summary judgment, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Blackstone v. Moore,* 7th Dist. No. 14 MO 0001, 2017-Ohio-5704, citing *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Myocare Nursing Home, Inc. v. Fifth Third Bank*, 98 Ohio St.3d 545, 2003-Ohio 2287, 787 N.E.2d, 1217, ¶ 33.

> **First assignment of error:** The trial court erred in granting Appellees' motion for summary judgment on the question of whether the outstanding royalty interests were abandoned and/or extinguished by operation of the 2006 version of the Ohio Dormant Mineral Act, R.C. 5301.56, and the Ohio Marketable Title Act, R.C. 5301.47, *et seq.*

### 2006 DORMANT MINERAL ACT

{¶36} Appellees argued, and the trial court held that the Outstanding Royalty Interests were deemed abandoned under the DMA.

{¶37} Pursuant to R.C. 5301.56(B): "Any mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied and none of the following applies:  (1) the interest is in coal; (2) the interest is held by the government; or (3) one of six listed savings events has occurred within the twenty years immediately preceding the date on which notice is served or published under division (E)."  Two of the savings events include when "the mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located" or "a claim to preserve has been filed in accordance with division (C) of this section."  R.C. 5301.56(B)(3)(a) & (e).

{¶38} Pursuant to R.C. 5301.56(E)(1), a surface owner attempting to reunite the surface with the mineral interest must:

> Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned.  If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located.  The notice shall contain all of the information specified in division (F) of this section.

{¶39} The procedures in R.C. 5301.56 govern the manner by which mineral rights are deemed abandoned and vested in the surface holder and apply equally to claims that the mineral interests were abandoned prior to June 30, 2006.  *M & H Partnership v. Hines,* 2017-Ohio-923, 86 N.E.2d 780 at ¶ 5, citing *Corban v. Chesapeake Exploration, L.L.C.,* 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 28, 31.  This Court reiterated the Ohio Supreme Court's holding that "the 2006 version of the Dormant Mineral Act applies to all claims asserted after 2006 alleging that the rights to oil, gas, and other minerals automatically vested in the owner of the surface estate prior to the 2006 amendments."  *Darrah v. Baumberger,* 7th Dist. No. 15 MO

0002, 2017-Ohio-8025, ¶ 21, citing *Walker v. Shondrick-Nau,* 149 Ohio St.3d 282, 2016-Ohio-5793, 74 N.E.3d 427, ¶ 16, citing *Corban* at ¶ 2.

**{¶40}** Appellant argues that Appellees failed to properly identify and notify all holders of the outstanding royalty interests and as such the trial court erred in concluding that the Outstanding Royalty Interests were abandoned under the 2006 DMA.

**{¶41}** Appellant also contends the Appellees did not satisfy the due diligence that is required by Ohio law before permitting notice by publication, stating that there is no evidence in the record, by affidavit or otherwise, that speaks to what due diligence was performed by Appellees in ascertaining any living record holders, next-of-kin, successors or assigns to serve by certified mail. (Gulfport Opp. To MSJ at 19). Appellant notes that a search of records from Belmont County Probate Court reveals four persons connected with the "Jefferies Royalty Interest" as potential surviving heirs and devisees of the Jefferis interest:  Virginia A. Bennett; Geraldine Jefferis; Maurice Jefferis; Delores Frazier.  (Gulfport Opp. To MSJ at 20).

**{¶42}** Appellant further argues that since multiple claims to preserve were filed by the heirs and assigns of Mary F. Cummiskey as to the 35-acre parcel, the rights of all holders of that mineral interest were preserved and the DMA claim as to the 35-acre parcel fails.  R.C. 5301.56(C)(2).

**{¶43}** Appellees rely on R.C. 5301.56(H)(2), which provides that where there is no claim to preserve or notice of a saving event filed in response to a notice of abandonment, the owner of the surface land shall file a "notice of failure to file" and immediately after the notice of failure to file a mineral interest is recorded, the mineral interest shall vest in the owner of the surface of the lands.  Moreover, "the record of the mineral interest shall cease to be notice to the public of the existence of the mineral interest or of any rights under it.   In addition the record shall not be received as evidence in any court in this state on behalf of the former holder or the former holder's successors or assignees against the owner of the surface of lands." R.C. 5301.56(H)(2)(c).   Appellees argued, and the trial court agreed, that because the notations of abandonment were made on the margins of the deeds severing the mineral interests, that proof of those mineral interests could not be used as evidence in a court

of law. However, this record reflects several issues have been raised that prevent abandonment.

**{¶44}** In *Shilts v. Beardmore,* 7th Dist. No. 16 MO 0003, 2018-Ohio-863, 2018 WL 1225745, ¶ 11, appeal not allowed by *Shilts v. Beardmore,* 153 Ohio St.3d 1433, 2018-Ohio-2639, 101 N.E.3d 464, the appellants argued that appellee failed to comply with the notice requirements of R.C. 5301.56(E)(1) since service by certified mail was not attempted prior to providing notice by publication. This Court noted that an affidavit had been filed by appellee's counsel which indicated that attempts had been made to locate the heirs of the subject mineral interest through a public records search (including a search of probate records), an online search, and a search of the Ohio Department of Natural Resources, Oil and Gas Division, in connection with the property at issue, but that no heirs were revealed, necessitating the notice by publication. *Id.* at ¶ 14. The *Shilts* Court held that it was "apparent from the record that Appellee took reasonable efforts to locate the Beardmore/Moore heirs in order to serve publication by certified mail but was unable to locate names and addresses in order to complete service by certified mail." *Id.* It was further noted that when the appellee served notice by publication, it was not only a listing of the original holders, but "broadly included their unknown heirs, devisees, executors, administrators, relicts, and next of kin." *Id.* at ¶ 15. This Court held that "[i]t would be absurd to absolutely require an attempt at notice by certified mail when a reasonable search fails to reveal addresses or even the names of potential heirs who must be served." *Id.* The record in that case reflected that service by publication was appropriate where appellee was unable to complete service by certified mail. *Id.*; see also *Sharp v. Miller,* 7th Dist. No 17 JE 0022, 2018-Ohio-4740, 2018 WL 6179468 (holding notice by publication was appropriate where two affidavits were provided that demonstrated reasonable due diligence from the search efforts which included a public records search (probate and deed records), a title report, an online search through a subscription service, and a visit to the Carroll County Genealogical Society).

**{¶45}** Appellant in this matter contends that Appellees failed to conduct due diligence to determine holders and potential holders of the mineral interests at issue, and did not provide support for their failure to provide notice by certified mail, choosing

only to provide notice by publication. Here, it is undisputed that certified mail was not attempted as to either the 35 acre parcel or the 94 acre parcel. Appellees stated, "[t]here were no living 'record holders' of record that could be served, thus prospective heirs and next-of-kin were served by publication." (Plaintiff's MSJ, pg.2).

**{¶46}** The failure to provide certified mail notice as to the 94 acre parcel is an issue that will be further discussed herein. As to the 35 acre parcel, since claims to preserve were filed, it is clear that notice was sufficient to inform at least one person. As this Court has held, "[t]he purpose of the notice requirement is to have the persons with mineral interests receive the notice of the surface owner's intent to claim the mineral interests abandoned. Therefore, since notice was received and that party could [take] timely action to preserve the mineral interests, failure to strictly comply with the notice requirement, in this instance, amounts to harmless error." *Dodd v. Croskey,* 7th Dist. No. 12HA6, 2013-Ohio-4257, ¶ 59, *affirmed by Dodd v. Croskey,* 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147 (2015). However, even if this error could be construed as harmless, this does not end our review of the issue regarding the 35 acre parcel.

**{¶47}** Pursuant to R.C. 5301.56(H)(1):

> If a holder or a holder's successors or assignees claim that the mineral interest that is the subject of a notice under division (E) of this section has not been abandoned, the holder or the holder's successors or assignees, not later than sixty days after the date on which the notice was served or published, as applicable, shall file in the office of the county recorder of each county where the land that is subject to the mineral interest is located one of the following: (a) A claim to preserve the mineral interest in accordance with division (C) of this section * * *

**{¶48}** Carl Anderson Williams, Sr., by Carl Anderson Williams, Jr., Levena Ellen Paducah and Susan Christine Busey, each filed claims after receiving notice of abandonment regarding the 35.1623 acre parcel of real estate. (Appellees' Brief at x, citing Complaint at ¶ 89). Carl Anderson Williams, Sr. died May 23, 2013. (Appellees' Brief at x, Complaint at ¶ 90). The two living claimants and the residual beneficiaries of

the Last Will & Testament of Carl Anderson Williams, Sr. each conveyed any interest they may have to Appellees by Quit Claim Deed filed for record March 11, 2014, in Volume 463, page 147, Official Records of Belmont County. (Appellees' Brief at x, Complaint, Ex. D).

{¶49} William R. Parr filed an Affidavit, Claim to Preserve with regard to the 35.1623 acre parcel of real estate with the Belmont County Recorder on November 21, 2011, in Book 295, at page 932, Official Records of Belmont County. (Appellees' Brief at xi, Complaint, Ex. P).

{¶50} Appellees assert that some of the claims that were filed on the 35 acre parcel were by "people who were not record holders and therefore lacked standing to file a claim." (Plaintiff's MSJ, pg. 2). Appellees classify the claims that were filed to preserve the mineral interests as "false and fraudulent." (Appellees' Brief at xiii). Appellees further argue that even if the claims were legitimate, they are moot because the interests were extinguished pursuant to the MTA such that there were no interests remaining to preserve. (Appellees' Brief at xiii), citing *Warner v. Palmer,* 7th Dist. 14 BE 0038, 2017-Ohio-1080, ¶ 34 (a recording after the effective date of the root of title shall not revive or give validity to any interest which has been extinguished by R.C. 5301.50 prior to the time of recording). However, beyond mere allegation, there was no evidence submitted by Appellees to the trial court in support of those statements. Rather, the trial court was provided with the claims to preserve that were filed (claims filed by the purported Cummiskey heirs were all titled "Affidavit and Notice of Non-Abandonment"), which stated the nature of the mineral interest claimed, the recording information upon which the claim was based, a legal description of the property, and that the claimant did not intend to abandon the interest but rather was claiming the interest as an "heir, devisee, next of kin and assign" of Mary F. Cummiskey." (Gulfport's Opp. to MSJ, Winzeler Aff., at Exs. F, G, H). There was no evidence that demonstrated the claimants were not Cummiskey heirs as alleged. There was no evidence to demonstrate that the claimants lacked standing. In fact, those same claimants were named defendants in the underlying action filed by Appellees, and were only dismissed after those claimants tendered quit-claim deeds transferring any purported interest that they possessed to Appellees. The subsequent quit-claim deeds tendered in 2014 (quit-

claim deed transferring any interests of Busey, Paduch, Luther, Gee, & Williams) and 2016 (Plaintiffs' MSJ Exs. A-D, Judg. Entries filed with Clerk Nov. 15, 2016, Nov. 28, 2016, December 22, 2016, and Dec. 27, 2016) transferring any interests after the initial claims to preserve were filed cannot "undo" the preservation of the interests from the 2011 filings. As the Supreme Court noted in *Dodd,* 2015-Ohio-2362 at ¶ 28, "a claim that meets [the requirements of R.C. 5301.56(C)(1)] preserves the rights of all of the mineral-interest holders in the land." As a result, summary judgment on the DMA claim as to the 35 acre parcel should not have been granted based upon the claims to preserve that were timely filed.

{¶51} There were no claims to preserve filed on the 94 acre parcel. We do not have any proof that any of the holders, or their heirs, successors or assignees actually received the notice that was served via publication. Appellees only served notice by publication, and did not submit an affidavit or other evidence as to what "diligence" was undertaken to identify holders to complete service by certified mail. The trial court found that the Appellees "performed a diligent search of the Belmont County Public Records" in order to identify and notify holders by certified mail before proceeding to notice by publication. (JE, Findings of Fact ¶ 6, 30). However, there was no evidence submitted in support of the trial court's findings. Appellants note that Appellees assert that they "went to great lengths to search title to the severed minerals," (Appellees' Br. at 14), yet there is nothing in the record to support this assertion – no affidavits included with summary judgment, no evidentiary hearing, and the DMA affidavits of abandonment are silent as to the efforts undertaken by Appellees to locate holders. (Reply Brief at 6; Complaint, Exs. C & H). Although there is no statutory requirement to file an affidavit detailing the efforts undertaken by the Appellees before serving notice by publication, there must be some evidentiary support offered on this issue, especially where, as here, the Appellants dispute this assertion and presented evidence to the trial court identifying four additional persons in probate records that were heirs of the original holders. (Gulfport Opp. to MSJ at 20; Winzeler Aff. at Exs. L, M, N, O). See *Sharp v. Miller,* 7th Dist. No. 17 JE 0022, 2018-Ohio-4740, ¶ 18 (noting that two affidavits were filed in support of summary judgment detailing the party's search efforts prior to proceeding to notice by publication); *Wendt v. Dickerson,* 5th Dist. No. 2017 AP 08 0024, 2018-Ohio-

1034, ¶ 18 (trial court finding that the claim failed in part under the 2006 DMA because there was no evidence in the record that certified mail service was ever attempted or completed before they served by publication). In addition, it appears the Appellees may have limited their search to living "record holders" and it is not clear whether the Appellees attempted to identify and notify any heirs of the original holders. See *M & H P'Ship v. Hines,* 7th Dist. No. 14 HA 0004, 2017-Ohio-923, ¶ 19 (stating the definition of holder in R.C. 5301.56 is broad and included the heirs in that case). The trial court found that the record holders' reserved mineral interests were never listed and administered in the estates of the record holders, or of their heirs, successors or assignees; and therefore, there was no notice of a transfer of the severed mineral interests to anyone. (JE at 28). This finding demonstrates a restricted definition of holder, contrary to this Court's determination that the definition of holder is broad, and may include heirs whose interests are not memorialized in a probated estate or recorded conveyance. See *Warner v. Palmer,* 7th Dist. No. 14 BE 0038, 2017-Ohio-1080, ¶ 26 (stating "[a] person does not lose an inherited mineral interest under probate law merely because it was not listed during an estate administration; they may lose it due to other pertinent facts under a law such as the 2006 Dormant Mineral Act (via time lapse without a savings event and a failure to file a timely claim to preserve or affidavit identifying a savings event)).

**{¶52}** There remains a genuine issue of material fact as to whether heirs of the original holders could have been identified and served via certified mail in order to comply with the notice provisions of the 2006 DMA as to the 94 acre parcel. Because service by publication is statutorily a "last resort" utilized only after actual service cannot be obtained, without any evidentiary support as to the search or "diligence of the search" completed before solely providing notice by publication, the trial court also erred in granting summary judgment on the basis of the 2006 DMA as to the 94 acre parcel.

## MARKETABLE TITLE ACT

**{¶53}** Appellees argued, and the trial court found that the Outstanding Royalty Interests were extinguished under the MTA. The purpose of the MTA is "to extinguish interests and claims in land that existed prior to the root of title with 'the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely

on a record chain of title.'"  *Corban, supra,* at ¶ 17.

**{¶54}**  R.C. 5301.48 provides:

Any person having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest as defined in section 5301.47 of the Revised Code, subject to the matters stated in section 5301.49 of the Revised Code.

A person has such an unbroken chain of title when the official public records disclose a conveyance or other title transaction, of record not less than forty years at the time the marketability is to be determined, which said conveyance or other title transaction purports to create such interest, either in:

(A) The person claiming such interest; or some other person from whom, by one or more conveyances or other title transactions of record, such purported interest has become vested in the person claiming such interest; with nothing appearing of record, in either case, purporting to divest such claimant of such purported interest.

**{¶55}**  The Root Deed or "root of title" is the:  "[c]onveyance or other title transaction in the chain of title of a person, **purporting to create the interest claimed by such person**, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined."  R.C. 5301.47(E) [emphasis added].

**{¶56}**  The trial court found that the Appellees' root of title for the 35 acre parcel was filed for record on July 7, 1967, in Deed Volume 498, at page 262, Belmont County Deed records.  (JE at ¶ 20).  The root of title includes the following language:  SECOND EXCEPTION:  Oil and gas royalties and rentals as heretofore reserved, sold and conveyed.

**{¶57}**  The trial court found the root of title for the 94 acre parcel was filed for

Case No. 17 BE 0022

record April 14, 1972 at Volume 530, page 435, Belmont County Deed records. (JE at ¶ 37). The root of title contains the following: ALSO EXCEPTING one half of the royalty on oil underlying said premises belonging to J.J. Jefferis.

{¶58} Appellant challenges the root of title deeds relied on by Appellees and the trial court, arguing that they do not purport to create any interest in oil or gas in the Appellees, or in some other person or entity from whom the oil and gas interest has passed and vested in Appellees. This Court agrees. Since there is a reservation in the root of title deed, this Court's prior holdings render this an improper root of title deed, because it is not the "interest claimed" by Appellees, namely, an interest free of any reservations. See *Christman v. Wells,* 7th Dist. No. 539, 1981 WL 4773, *1 (holding that since the "root of title" deed in that case recited the reservation of royalties, it was not "the interest claimed" by appellants as required pursuant to the definition of "root of title"); see also *Holdren v. Mann,* 7th Dist. No. 592, 1985 WL 10385, *2 (finding the purported root of title deed in that case as insufficient because it did not contain a fee simple title free of any such oil and gas exception and reservation, because it repeated the original exception of all the oil and gas). The *Christman* and *Holdren* courts focused on the existence of the reservation within the purported root of title, and did not undertake an examination as to whether the language was general or specific if it was contained within the root of title deed.

{¶59} Similarly here, neither of the root of title deeds identified by Appellees are eligible to support an MTA claim, since both contain exceptions within the deeds. As such, the trial court erred in determining that the interests were extinguished pursuant to the MTA.

> **Second assignment of error**: The trial court erred by denying Appellant summary judgment on question of whether the parties' oil and gas lease authorized Appellant to place royalty payments attributable to the outstanding royalty interests into a suspense account in light of undisputed evidence that Appellees did not have title to the outstanding royalty interests.

{¶60} A decision *overruling* a motion for summary judgment is generally not a

final appealable order. *Onady v. Wright State Physicians, Inc.,* 2d Dist. No. 27954, 2018-Ohio-3096, 2018 WL 3744814, ¶ 9; *Hubbell v. City of Xenia,* 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9. The general rule in Ohio is that denial of a motion for summary judgment does not determine the action and prevent a judgment and thus generally does not constitute a final order under R.C. 2505.02. *Martynyszyn v. Budd,* 2004-Ohio-4824, ¶ 17, citing *Celebrezze v. Netzley,* 51 Ohio St.3d 89, 90, 554 N.E.2d 1292 (1990); *Rulli v. Rulli,* 7th Dist. No. 01 CA 114, 2002-Ohio-3205, ¶ 11. The denial of summary judgment merely affords appellants the opportunity to have their day in court. *Id.* at ¶ 12. The same is true in the instant case. The trial court's denial of summary judgment did not determine the action with regard to the placement of the royalty payments in a suspense account; nor did it prevent a judgment based upon its decision. Appellants will have the ability to argue the merits of this issue at trial in the underlying action.

**{¶61}** Thus, based on all of the above, the first assignment of error has merit, and the trial court's decision that the interests were abandoned and extinguished under the DMA and MTA is reversed. Appellant's second assignment of error is without merit. The trial court correctly concluded as to the royalty payments that there remains genuine issues of material fact to be litigated and therefore, summary judgment was not warranted. This matter is remanded to the trial court for further proceedings.

**Waite, P. J., concurs.**

**Robb, J., concurs.**

Case No. 17 BE 0022

---

For the reasons stated in the Opinion rendered herein, Appellants' first assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**